John V. Price, plaintiff in error, vs. Allen S. Cutts, Sheriff, and George A. Brown et al., defendants in error.

[1.] An agreement to execute a mortgage *in presenti*, the actual execution failing through inadvertence, does not constitute such a lien as will prevail against subsequent judgment creditors.

[2.] The Sheriff, or one who acts as his agent, *pro hac vice*, is entitled only to his prescribed fees for keeping negroes, stock, &c., although he works them profitably, and brings the product of their labor into Court for the benefit of creditors.

[3.] A person who collects funds of a debtor for the joint benefit of himself and other creditors, ought, when that fund is distributed by a Court of Equity, to be allowed reasonable compensation for the services of himself and lawyers, to the extent to which those services are productive and beneficial.

Motion to dissolve injunction, and to distribute money, in Sumter Superior Court. Decided by Judge Allen, April Term, 1859.

These were two motions heard and decided together by the Court below; one a motion to dissolve an injunction which had been granted at the instance of John V. Price, on a bill filed by him against William M. Brown, Gilbert C. Carmichael, George A. Brown, Henry H. Brown and Allen S. Cutts, Sheriff, and others; the other a motion to distribute money in the hands of the Sheriff, arising from the sale of certain property belonging to said George A. Brown.

Price alleged in his bill, in substance, that at November Term, 1857, of the Inferior Court of Sumter county, he obtained judgment against George A. Brown, who had absconded, in an attachment case sued out before that time; that William M. Brown, the father of said George A. and Gilbert C. Carmichael, and Henry H. Brown and said Gilbert C. Carmichael, late partners of said George A. Brown, under the name and firm of George A. Brown, also sued out their attachments against the said George A. Brown, which were levied one day before the attachment of complainant, and obtained judgments thereon at the same Term of the Inferior Court, to-wit: November Term, 1857; that said attachments were levied upon one thousand acres of land, thirty or forty negroes, about ten mules and horses, as the property of the absent debtor, and the total amount of the claims or demands, upon and for which said attachments issued, was twenty five or thirty thousand dollars.

The bill further charges that the attachment of Carmichael was for a debt or claim consisting of four notes purporting to be made by George A. Brown, payable to Henry H. Brown or order, each for $2,072 32, and endorsed by Henry H. Brown and Gilbert C. Carmichael, and that said notes were given for and on account of the debts of the firm, composed of said George A. Brown, H. H. Brown and Gilbert C. Carmichael, under the name of Geo. A. Brown, as before stated, and that said Carmichael and H. H. Brown were equally bound as partners with George A. Brown for said notes.

The bill further charges that the attachment of Brown and Carmichael was founded on a debt contracted by said George A. Brown, for and on account of said firm, and that said H. H. Brown and Carmichael are equally bound as partners, each for one-third of said debt.

The bill further states, that complainant's attachment was founded on a debt *bona fide* due by said George A. Brown, and amounting to $3,523 63.

The bill further charges, that William M. Brown has received a large amount of money, notes and accounts belonging to his son, the said George A., and which he holds in his hands unaccounted for, and which should be applied to the claims of his creditors; that William M. Brown's attachment is founded on a bill drawn by him on the said George A. Brown, and accepted by the latter. Complainant charges that no cause of action accrued thereon to said William M. Brown, by reason of such acceptance.

The bill further charges, that the said Wm. M. Brown, acting or pretending to act as the agent of his son, after his departure from the State, received a large amount of money from the proceeds of the growing crop, and which he has failed to pay to the creditors of his son, or in any manner to account for; and also collected from the notes, accounts, &c., left belonging to George A. Brown, or to the firm aforesaid of Brown, Carmichael & Brown, a large amount, and which he has failed to pay to the creditors of said George A. Brown.

The bill further states, that said William M. Brown, as guardian for the children of his son George A. Brown, interposed a claim to five of the negroes levied on as the property of his son; that he has also interposed a claim in behalf of Mrs. Brown, for 13 of said negroes, and her father has also for her and her children, interposed a claim for 14 more of the said negroes; and the vendor of the land sold has also interposed *his* lien for the purchase money, amounting to over $3,000, and all of said claims are now pending.

The bill further states, that the Sheriff has in his hands some ten thousand dollars, arising from the sale of George A. Brown's property, and which is claimed by the said vendor of the land sold, and also by William M. Brown, on executions older than those obtained in the attachment cases aforesaid, and which he has purchased and got the control of, and as the bill charges, purchased and bought by him with the money of his son, the defendant in these *fi. fas.*

The prayer of the bill was for an injunction to restrain the Sheriff from paying out the funds in his hands until the rights of the parties can be settled and adjudicated; that William M. Brown account for the proceeds of the crop, and the money collected on the notes, accounts, &c., belonging to the absent defendant, George A. Brown, and that he set forth fully the consideration and amount of all the judgments and demands which he holds; and that H. H. Brown and Carmichael do the same, and that the priorities of the claims of all parties be fixed by the decree of the Court, and the money in the hands of the Sheriff be applied accordingly.

Complainant filed an amendment to this bill, alleging that it was the agreement, and George A. Brown promised, in consideration that complainant would accept the draft for him, and which is the foundation of his claim, to execute a mortgage to him for five negroes, to secure and indemnify him for his liability incurred by said acceptance; that the mortgage was prepared, and complainant thought that the same had been duly signed, sealed and delivered, until afterwards, when he discovered that the paper handed to him by Brown as the mortgage agreed upon, had not been signed by him, and was unexecuted. He prays that said mortgage be set up, or that he be declared to have a lien upon the money in the Sheriff's hands, arising from the sale of the negroes, which were to be mortgaged to him as aforesaid.

Defendants answered the bill, Carmichael and William M. Brown denying any fraud, collusion or combination, as charged in the bill, setting forth the consideration of their respective claims and their amounts, all of which they allege to be founded on valuable consideration and *bona fide*. The partnership charged in the bill, is in effect, admitted by Carmichael.

William M. Brown denies that the old judgments against his son were bought with funds belonging to him, but

that they were purchased by defendant with his own money, and with a view to prevent a levy of the same upon the plantation and negroes in the midst of the summer, and thereby breaking up its operations and preventing the making of the crop then growing; admits that he did interpose the claims mentioned, and made such arrangements as enabled him to keep the negroes on the plantation till the crop was made; and he makes an exhibit of his receipts and expenditures in relation thereto, and claims that the amount realized therefrom, he be allowed to apply to his judgments of junior date. He also claims that a reasonable sum be allowed to him as compensation for his care, trouble and services in managing said plantation, and in collecting the notes, accounts, &c. He also claims that a reasonable sum be allowed to his Attorneys, for advice and services rendered in the management of the affairs of the said George A. Brown. The cause was heard upon the bill and answers, and after argument, the Court ordered, decreed and adjudged:

1st. That the injunction be dissolved as to the fund in the hands of the Sheriff, the equities set up in relation thereto being fully denied by the answers; and that complainant has no claim or lien on said fund, or that portion arising from the sale of the five negroes, by virtue of the agreement between himself and George A. Brown, in relation to their being mortgaged to him ; said agreement not having been executed.

2d. That the Sheriff retain the amount claimed by the vendors, in and under their bill now pending, being the purchase money unpaid, and to which they set up a lien as vendors.

3d. The Sheriff retain an amount sufficient to pay all costs.

4th & 5th. That the Sheriff pay out of the funds in his hands certain executions, (naming them) being the oldest liens, and about which there is no controversy.

6th. That William M. Brown credit on the four old *fi. fas.*

owned and held by him, (naming them) the net proceeds of the crop made on defendant's, George A. Brown's, plantation in 1857, and also credit thereon the amounts received by him from the assets of George A. Brown, as admitted in his answer, and that the balance due on these *fi. fas.* be paid by the Sheriff, out of the funds in his hands.

7th. That he pay the tax *fi. fa.* amounting to $38 68.

8th. That after paying the foregoing amounts, that the Sheriff pay the balance that may be in his hands, *pro rata,* to the *fi. fas.* of John B. Ross and others, (naming them) against said George A. Brown.

The judgments obtained in the attachment cases, being all of junor date, are not provided for in the above distribution; the older judgments at common law being more than sufficient to exhaust said fund.

To which order, judgment and decree, counsel for plaintiff excepted.

JAS. J. SCARBOROUGH; and C. ANDERSON, for plaintiff in error.

SAMUEL ELAM, for Carmichael; McCAY & HAWKINS, for Wm. M Brown; LYON & IRWIN, and BUTLER, for Way & Taylor.

*By the Court.*—STEPHENS J. delivering the opinion.

1st. The case made by the original bill, so far as the defendant, William M. Brown, is concerned, is confessedly stripped of all its equity by the answer of Brown. It was so conceded in the argument, and the complainant relied only on his amended bill, setting up a mortgage which he alleges was, by agreement between him and George A. Brown, to have been executed by the said George A. at the time when the complainant's demand was contracted, but which failed of execution through some "inadvertence." There was a

demurrer to this amended bill, and the question is, whether it is a good bill. Will equity set up this agreement against other creditors of George A. Brown? We think not. Equity will *reform* an instrument, but it will not *make* one. To make a case for relief, there must be an execution of *something*. Where the wrong thing is executed by mistake or fraud equity will, on sufficient proof, substitute the thing, which was really intended by the parties, in place of that which was executed by mistake or fraud. But to set up a contract where no execution of anything has been had, would be to make a contract, and not to reform one. Again, "inadvertence," without even saying whose inadvertence it was, is a new ground for equitable interposition. But, again, upon the principle that equity considers that which ought to have been done, as having been done from the beginning, the case which the complainant makes is that of an actual mortgage, (the aid of equity being sought merely to furnish and perpetuate the evidence of that which has existed all the time) and it cannot be maintained against subsequent judgments, as is asked to be done here, because it was not *recorded* within three months. The statute of 1827, *Cobb's Dig. page* 172 *and sec.* 4, is express that no mortgage, unless recorded within three months, shall prevail against any judgment obtained before the foreclosure of the mortgage. There was no foreclosure here, and indeed could not be. It was attempted in the argument to escape from this reasoning by saying this is not a mortgage, but an agreement for a mortgage, creating not a lien by mortgage, but a mere *equitable* lien. Cases were read to show that such an equitable lien is created by an agreement to execute a mortgage, but all these were cases where the mortgage was to be executed at some future day, not where the mortgage was to be had *in presenti,* but failed by mere want of execution. There is a difference, as it seems to me, between such a contract as equity will set up *as* a mortgage, treating it as having been a mortgage from the beginning, after it is set up on the one

hand, and on the other hand a mere agreement for a mort-
gage at a future time.   The latter cannot be enforced, *as* a
mortgage, for equity will not compel parties to form a written
contract, merely because they have verbally agreed to do so
without ever having attempted it.   In the one case you have
an actual mortgage existing from the beginning, not proper-
ly evidenced, to be sure, till equity, by its reforming hand,
supplies the exact evidence, but still when so evidenced at
last, relating back to the beginning, and counting as a *mort-
gage*, a *legal* statutory lien, and not a mere equitable lien.
Now the case made by the complainant if it is anything, is the
case of a *mortgage*, and it is not good against the judgment
creditors, for want of record.   The case of *Wall vs. Arring-
ton et al. in* 13*th Ga. Rep.*, has been invoked as an authority
for setting up this agreement as a mortgage.   In that case
a mortgage which had been executed, and duly *recorded*, was
allowed to be corrected against judgment creditors, by strik-
ing out No. 109, and inserting No. 112; but there the num-
ber of the land was only a part of its description; the land
really mortgaged was that which Wall had notoriously
possessed for many years, and that was No. 112.   The Judge,
in that case, expressly says, " it was lot No. 112, and not lot
No. 109, that was mortgaged;" thus treating the number as
only a part of the description to be corrected by reference to
other circumstances and marks of identity; and in that case
the effect of our statute requiring mortgages to be recorded,
was manifestly not discussed nor considered, and no case can
be an authority for a doctrine not at all considered in it.   The
case of *Printup vs. Johnson,* 19  *Ga. Rep.*, has also been
urged as an authority for the complainant.   All that need
be said of that case is, that it is no case of a *mortgage.*
There are different kinds of liens, some legal and some
equitable, some needing record, and others not; but we are
dealing with a mortgage, and to hold such a lien good with-
out record, would be to set the statute at defiance.   The
original bill having been fully met by the answer, and the

amended bill being bad, we hold that the Court was right in dissolving the injunction as to William M. Brown. This is the only error of which the plaintiff in error complains, but by agreement two other parties were allowed to assign error.

2d. The firm of Brown & Carmichael assign as error under this agreement, the refusal of the Court to dissolve the injunction as to them.

We think the Court was right in this refusal. Their answer does not swear off the equity of the original bill, as to them, but on the contrary, in effect admits the partnership charged, and that the debt which they were seeking to collect out of George A. Brown, was not his individual debt, but one in which they were jointly liable, and equally interested with him. Their attachment had a precedence over that of the complainant by reason of its earlier levy, and it ought to be restrained from using that advantage, unless it is a *bona fide* claim. The injunction was rightly retained as to it.

3d. But William M. Brown also assigns error in the distribution of the fund which was turned loose by the dissolution of the injunction, and in refusing him compensation and attorney's fees, &c. He claims that he should have been allowed to apply the fund, which he had collected from the books, notes, &c., of George A. Brown, as a credit upon his younger attachment instead of upon his older *fi. fas.* We think not. To be sure there was no lien upon this fund, and the debtor, George Brown, might have applied it as he pleased, but he did not apply it all. The creditor also might have applied it, in the absence of any application of it by the debtor, but he too had failed to make any application of the fund, when equity laid its hand upon it. Equity having got possession of it, proceeded to apply it to the oldest liens first, and that was only following the law.

4th. He also complains that the Court erred in refusing him compensation for his services in making a crop with the negroes levied on. He claims in his answer, that he was acting as agent of the *Sheriff* in making this crop, and so he

Price vs. Cutts, Sheriff, et al.

was. But being agent for the Sheriff, he must stand in the Sheriff's shoes, and we are unwilling to lay down any rule of compensation for the Sheriff, except that prescribed by statute, that is to say his fees for keeping the negroes, &c. But in this case the negroes were kept out of their own labor, the result of the crop brought into Court, being the *net* proceeds after taking out all expenses, including the expense of keeping the negroes. We think there was no error in this particular.

5th. He also complains that the Court erred in refusing him compensation for his services and attorney's fees for services— to the estate of George Brown. We do not think he was entitled to compensation or attorney's fees, except for services in collecting the fund from the notes, books, &c. But for his services in collecting this fund which was for the benefit of all the creditors, we do think he was entitled to reasonable compensation, and to reasonable attorney's fees paid out in the collection of that fund. An allowance for attorney's fees for attending to the general interest of George Brown, was properly refused. Compensation ought to be allowed only for those services, which proved fruitful to creditors. As all compensation was refused, we are constrained to reverse the judgment, but it is reversed only on this last assignment of error, and reversed only to the extent stated.

Judgment reversed.