Filed December 20, 1892.

---

No. 14,926.

SAINT JOSEPH HYDRAULIC COMPANY *v*. WILSON ET AL.

LEASE.— *Contract of.*—*Rent.*—*Lien for.*—*Machinery and Fixtures.*—*When Chattels.*—*Scope of Lien.*—*"Goods."*—*Meaning of.*—*License.*—*Verbal Contract for a Lease.*—A hydraulic company sold a certain tract of land adjoining their hydraulic canal, and agreed, as part consideration, to furnish the grantees free water power for three years, and after said time to execute a lease for water power for a certain rent per annum, the lease to provide for a lien on the machinery and fixtures of a mill to be erected on said land, and to license the lessor, in default of payment of rent, to enter upon the premises, and shut off the water power, and take posses-

| 133 | 465 |
| 143 | 647 |
| 133 | 465 |
| 149 | 575 |
| 149 | 580 |
| 149 | 581 |
| 149 | 582 |

sion of said machinery and fixtures, and hold the same free and dis-
charged of all claim, right or title of the lessees, their heirs and assigns,
until all rents, interest, damages, and costs due the lessee shall be paid,
which lease was never executed, but the water rents were received by the
hydraulic company, from time to time, and by its successor, with knowl-
edge of the several changes in ownership of said mill, and upon the
terms stipulated.

*Held,* that the right to enter upon the premises, and to shut off the water
power, and to take possession of the machinery and fixtures, and to hold
the same free and discharged of all claim, right, or title of the owners,
until all the rents, etc., shall be paid, gives no interest in the land be-
yond a mere license to enter thereon for the purposes mentioned.

*Held,* also, that from the nature of the contract, the machinery and the
fixtures of the mill must remain personal property.

*Held,* also, that the machinery and fixtures being attached to the realty as
a part of it, and essential to its use and value, could not enlarge the
scope of the lien so as to include the realty.

*Held,* also, that the lien mentioned in the lease contract is a chattel lien,
and that the word "goods," as used in the statute of frauds, is broad
enough to cover "fixtures and machinery."

LIEN.—*Action on Oral Agreement to Execute a Mortgage.—When Equity will
not Aid.—Fraud.—Inevitable Accident.—Relief Against.*—In an action to
subject machinery and mill fixtures to an equitable lien for water rent,
upon an oral agreement to execute a written evidence of such lien, where
it does not appear that the failure to execute such instrument was because
of fraud or accident, but by neglect, equity will not aid to enforce such
a lien, as it only comes to the aid of those who, though awake, have been en-
trapped by fraud, or have been prevented from getting their agreement put
into writing by inevitable accident, and not to one who sleeps on his rights.

PLEADING.—*Contract.— When Copy of Need not be Filed with Complaint.*—
Where an action is not to enforce a written contract, but to enforce, as
executed, a contract, the terms of which had never been reduced to
writing, the action is not such as requires a copy of the contract to be
filed with the complaint.

CONTRACT.—*Lease.—Right of Lessee to Assign his Interest in.—Consent of Lessor.
—Rent.*—A lease contract, the provisions of which restricted the power
of the lessees to transfer their rights in the lease without the consent of
the lessor in writing, added nothing to the financial obligation of the
lessees, and did not alter the terms upon which rents were to be paid.

From the Elkhart Circuit Court.

*J. M. Vanfleet,* for appellant.

*H. D. Wilson, W. J. Davis* and *H. C. Wilson,* for ap-
pellees.

Saint Joseph Hydraulic Company *v.* Wilson *et al.*

HACKNEY, J.—This action was for the recovery of water rents from the appellees, the Erwin-Lane Paper Company, John C. Erwin, Abram Upp and Stephen A. Burrows, and to subject the paper mill, machinery, and fixtures of said company to an equitable lien for such rents as against the parties above named, and the several other appellees holding mortgage liens upon said property. The appellant recovered a personal judgment against the Erwin-Lane Paper Company and John C. Erwin for $1,820.60 and a lien, as against them, upon the machinery and fixtures of said mill, for the security of said sum, with interest and costs, but subject to the superior rights, as liens, of said several mortgages.

This judgment was upon special findings by the court, and in this court the appellant presents upon the assignments of error and argument these two questions: should the lien found in favor of the appellants have extended to the real estate of the Erwin-Lane Paper Company, and should it have been held senior to the liens of the mortgages?

The findings of fact disclose that on the 23d day of April, 1873, the appellant's predecessor, the St. Joseph Hydraulic Company and Building Association, owned certain real estate and water power in the city of Elkhart, and on that day entered into a written contract with John C. Erwin, Abram Upp, Stephen A. Burrows, and one George W. Erwin, now deceased, to sell them a tract situated upon the hydraulic canal of said association, and indicated by general description, a deed for which was to be executed as soon as a survey could be made. The association reserved certain privileges in controlling the flume on the land, and to extend the uses of its water power to other tracts, and agreed to furnish them, for propelling their mill machinery, two hundred horse power of water free of charge for the first three years, and thereafter at the rate of two hundred dollars per annum for each ten-horse

power to be leased. It was also agreed that said association should give a lease to said Erwin, Upp, Burrows, and Erwin, embodying the foregoing, and to conform to certain "conditions and covenants" of an indenture named, two of the provisions of which indenture are as follows:

"If the rents hereinbefore agreed to be paid to said association or its assigns shall not be paid according to the terms of this contract, or if the same or any portion thereof shall remain in arrear and unpaid for a longer time than two months after the same has been due and payable, then the said association, or its assigns, shall have the right, by its officers or agents, to enter into and upon the lots and premises upon which the wheels and works of the said George W. Erwin, J. C. Erwin, Abram Upp, and S. A. Burrows, their heirs or assigns, may be situated, and shall have the right to shut off the water from the said wheels and works, and to take possession of the said machinery and fixtures of the said George W. Erwin, J. C. Erwin, Abram Upp, and S. A. Burrows, their heirs or assigns, and to hold the same free and discharged of all claim, right or title of the said George W. Erwin, J. C. Erwin, Abram Upp, and S. A. Burrows, their heirs and assigns, until all the rents, interest, damages, and costs due to the said hydraulic company and building association shall be fully paid and satisfied.

"*Eighth.* The rights of the said George W. Erwin, J. C. Erwin, Abram Upp, and S. A. Burrows, under this instrument, shall not be transferred by them without the written consent of the treasurer of said hydraulic company and building association."

It is found that the deed of conveyance so agreed to be made was executed; that Erwin, Upp, Burrows, and Erwin erected, furnished and operated a paper mill upon the real estate conveyed; that the hydraulic company and building association, and its successor, the appellant, supplied the water power to operate said mill for the original and sev-

eral successive owners thereof; that the lease so agreed to be executed was never executed, nor was a lease according to the terms of said agreement ever tendered to said Erwin, Upp, Burrows, and Erwin, or their successors; that the water rents were received by said association and its successor, the appellant, from time to time, with a knowledge of the several changes of ownership in said mill, and upon the terms stipulated in said agreement, until 1884, when the Erwin-Lane Paper Company, a corporation, owned said mill, and owing to the financial embarrassment of said company, certain compromises were made in the water rent account, and it was agreed that thereafter the rents should become due and payable April first and October first, instead of January first and July first, as by the original agreement.

John C. Erwin is a member of said Paper Company; Abram Upp and Stephen A. Burrows have no interest in the litigation; the St. Joseph Hydraulic Company and Building Association has been succeeded in right by the appellant; Robert Wilson & Daniel McCallay, Daniel McCallay, the Farmers' National Bank of Constantine, Michigan, Frank B. Erwin and Jacob C. Lane, Frank B. Erwin, trustee for Elizabeth Ann Strowbridge, and Frank B. Erwin, executor of the estate of George W. Erwin, deceased, are the holders of mortgage liens upon the paper mill, machinery, and fixtures, which aggregate over $23,500, and the appellee, James A. Hill, is the assignee of the Erwin-Lane Paper Company.

The court further found that at the time of the delivery of the mortgages to Wilson & McCallay, and to McCallay, said McCallay knew of the existence of the contract for a lease, but knew nothing of its contents; that at the time of the delivery of the mortgages to the Farmers' National Bank, Lane and Erwin, and the mortgage to Frank B. Erwin, in trust for Elizabeth Ann Strowbridge, said Frank B. Erwin had full knowledge of the existence, terms, and

conditions of the original contract for a lease. And it is further found that by the contract of April 22, 1873, it was the intention of the parties that water rents should be secured by the proposed lease, in giving a lien upon the fixtures and machinery of the paper mill then in contemplation, and that said fixtures and machinery were to remain attached to the buildings of the proposed lessees.

It is urged by the appellant that the provisions of the contemplated lease, as to the security of water rents, were, by construction and implication, broad enough to include the freehold. The right " to enter upon the premises," and, while there, "to shut off the water from the wheels and works, and to take possession of the said machinery and fixtures, * * * and to hold the same free and discharged of all claim, right, or title" of the owners, "until all the rents, interest, damages, and costs due * * * shall be paid and satisfied," gives no interest in land beyond a mere license to enter for the purpose of exercising the primary right over the machinery and fixtures, which, from the nature of the contract, must remain personal property, as between the parties to the contract. The court found that it was the intention of the parties to the contract of April 22, 1873, to execute a lease which should give the lessors the right to hold, without removing, the fixtures and machinery to secure the water rents. The fact that the right to remove was withheld would not enlarge the scope of the lien so as to include property of a different class from that particularly designated.

It is clear that the parties might have contracted to continue the nature of the property, fixtures, and machinery as personalty, but to attach that property to the realty, as a part of it and essential to its uses and value, could not, as we have said, enlarge the scope of the lien so as to include the realty.

We have no finding as to the extent to which the fixtures and machinery were attached to the realty, and how

far, if at all, they lost identity as personalty. From their character, unattached to the realty, and from the fact that the parties contracted with reference to a lien upon them, as distinct from the real estate, we must treat them, as between the parties to that contract, as personal property. Binkley v. Forkner, 117 Ind. 181.

·The proposed lien being treated as a chattel lien, the appellant contends that it is not within the provisions of section 4913 of the Revised Statutes of 1881, which provides that "no assignment of goods, by way of mortgage, shall be valid against any other person than the parties thereto, where such goods are not delivered to the mortgagee or assignee and retained by him, unless such assignment or mortgage shall be acknowledged, as provided in case of deeds of conveyance, and recorded in the recorder's office of the county where the mortgagor resides, within ten days after the execution thereof."

The argument is that the word "goods," as used in the statute, is used in such a limited and technical sense as not to include "fixtures and machinery," and that, therefore, the contemplated lien could not have been a statutory lien.

If this contention of the appellant should succeed, not only would commercial usages of the State be overturned, but it would seem that the recognized construction of the statutory provision in question by this court for almost fifty years must be disturbed. While the exact question discussed has not been presented before, yet this court has recognized the application of the statute to other property than mere "goods" so long and so frequently as to settle it. The following are some of the decisions to which we refer: Sparks v. State Bank, 7 Blackf. 469, an engine; Tenant v. Rumfield, 11 Ind. 130, horses, wagon, and cows; Blakemore v. Taber's Exec., 22 Ind. 466, buildings and improvements; McCord v. Cooper, 30 Ind. 9, three yoke of oxen; Stinson v. Minor, 34 Ind. 89, a steamboat; Stonebreaker v. Kerr, 40 Ind. 186, horses and wagon; Sidener

v. *Bible*, 43 Ind. 230, horses and agricultural implements; *Ebberle* v. *Mayer*, 51 Ind. 235, stock, tools, and fixtures; *Holman* v. *Doran*, 56 Ind. 358, a brown mare; *Tindall* v. *Wasson*, 74 Ind. 495, two mule colts; *Zehner* v. *Aultman*, 74 Ind. 24, reaper, mower, and growing wheat; *Eaton* v. *McKahan*, 91 Ind. 109, a steam engine; *McCormick* v. *Hartley*, 107 Ind. 248, printing presses; *Binkley* v. *Forkner*, 117 Ind. 176, engine, boiler, etc.; *Brown* v. *Corbin*, 121 Ind. 455, a house; *McFadden* v. *Ross*, 126 Ind. 341, saloon fixtures, etc.; *Fordice* v. *Gibson*, 129 Ind. 7, staves.

Webster defines " good " as " a valuable possession or piece of property; especially and almost universally in the plural, *goods*, wares, commodities, chattels."

It is said in Burrill's Law Dictionary that the word " goods " strictly seems to be applicable only to *inanimate* movables, being in this respect less comprehensive than " chattels," which includes animals.

Either of these definitions is sufficiently comprehensive to include the property sought to be reached by the lien here claimed, but in *Curtis* v. *Phillips*, 5 Mich. 111, it is said that " the term *goods*, when used in contradistinction to real estate, would doubtless include all kinds of movable personal property." It is in this sense that the word is used in the statute in question, and must be held to include property of the description of that here involved.

A further question discussed is as to the effect of the appellant's failure to make the lease so agreed to be executed.

In vol. 1, p. 49, section 70, of Jones on Liens, it is said: " Had there been an express oral agreement that a mortgage should be given, and it could be shown that the failure to execute the mortgage was by reason of some fraud or accident, there might be good ground for relief in equity. But mere neglect to execute the mortgage, or neglect to execute a written agreement for a mortgage, is not such an accident as equity will relieve against. 'It does not come

Saint Joseph Hydraulic Company *v.* Wilson *et al.*

to the aid of the sleeper, but of him who, though awake, has been entrapped by fraud, or been prevented from getting his agreement put into writing by inevitable accident.'" *Printup* v. *Barrett*, 46 Ga. 407.

An agreement to execute a mortgage *in praesenti*, where the actual execution fails through inadvertence, does not constitute a lien of any force as against subsequent conditions. Boone on Mortgages, section 32; *Price* v. *Cutts, Sheriff*, 29 Ga. 142.

The contract set up is one for the execution of a mortgage lien; it is not the lien. Upon it the court is asked to enforce the rule of equity that it will consider as done that which ought to have been done. Equity will reform an instrument, but it will not make one. Where, by mistake or fraud, the wrong instrument is executed, equity will, where injustice will not be done to others, correct or substitute the contract intended by the parties. But in this case, if we declare the mortgage as executed, because, under the contract pleaded, it ought to have been executed, we not only set up a new contract, the execution of which was omitted by the inadvertence of the appellant, but we declare it as in existence from April 22, 1873, unrecorded. The conclusion, when we are confronted with the statute requiring a record of such liens as against third persons, finds its destruction. *Price* v. *Cutts, supra.*

It is unnecessary for us to decide that an equitable lien upon personal property may not exist in this State. Indeed, as between the immediate parties, we think it quite clear that it may, but supposing the lease contemplated by the agreement of April 22, 1873, to have been executed, it would have given the appellant such special property in the machinery and fixtures, upon default in water rents, as that it could have taken them into possession and held them "free and discharged of all claim, right, or title of" the lessees, "until all rents, interest, damage, and costs"

were fully paid; while an equitable lien is not an estate or property in the thing itself.

Says Mr. Pomeroy, in his excellent work on Equity Jurisprudence, vol. 3, section 1233 : "An equitable lien is not an estate or property in the thing itself   *   *   *   it is the very essence of this condition that while the lien continues the possession of the thing remains with the debtor or the person who holds the proprietary interest subject to the encumbrance."

By a long continued rule in this State, the lien of a chattel mortgage vests a special property interest in the mortgagee, although, by the terms of the mortgage, the possession of the property continues in the mortgagee. If, therefore, the contemplated lease had been executed, it would have been, in the features involved in this cause, a chattel mortgage. As we have seen, "no assignment of goods, by way of mortgage, shall be valid against any other person than the parties thereto, where such goods are not delivered to the mortgagee or assignee, and retained by him, unless such assignment or mortgage shall be acknowledged   *   *   *   and recorded   *   *   *." Section 4913, R. S. 1881. The equitable lien, the common law lien, and the statutory lien, are quite similar, so much so as to almost baffle distinction, the common law lien invariably requiring a delivery and retention of possession in the condition, being its principal distinguishing characteristic from the other two classes of liens. But in each there is that feature of an "assignment of goods," which, as "against any other person than the parties," renders it invalid under our statute, unless acknowledged and recorded.

The cases of *Kennedy* v. *Shaw*, 38 Ind. 474; *Lockwood* v. *Slevin*, 26 Ind. 124; *Ross* v. *Menefee*, 125 Ind. 432; *Scarry* v. *Bennett*, 2 Ind. App. 167; Boone on Mortgages, section 253, n. 14 and 15, establish the invalidity of such an "assignment of goods," even as to third parties with actual notice of the lien. This court held, in *Granger* v. *Adams*,

90 Ind. 87, that one who asserts a right under such an instrument paramount to the claims of creditors, must show that all has been done that the statute requires. There is but little more for contention by the appellant, against the appellees who are mortgagees. The court below committed no error in holding the mortgage liens senior to the claim of the appellant.

The appellees, by assignment of cross-errors, have presented several questions which, with one or two exceptions, have been considered in what we have already said. For the appellees, John C. Erwin and the paper company, it is urged that their demurrers to the complaint should have been sustained. It is said that the absence of a copy of the contract sued on was fatal to the complaint. The nature of the cause of action was not for the enforcement of an existing written contract, but to enforce, as executed, a contract, the terms of which had never been reduced to writing. The case is clearly an exception to the general rule requiring a copy of a contract which is the basis of the cause of action, to be made a part of the complaint. Neither is the cause a possessory action, and therefore does not come within the rule in *Roberts* v. *Norris*, 67 Ind. 386, requiring a demand.

It is also contended on behalf of said appellees, that the personal judgment against said John C. Erwin and the paper company was erroneous, because the appellant had permitted several of the original contracting parties to be released, and that, under the holding of this court in *Kennard* v. *Carter*, 64 Ind. 31, the release of one joint contractor releases all. The expressed terms of the contract, so far as it provided the stipulations of the proposed contract or lease, reserved the enforcement thereof not only as against the original contractors, but as against their assigns. John C. Erwin is one of the original contracting parties, and a member of the paper company, which company stands in the relation of an assignee to Upp, Burrows, and

George W. Erwin, and to the appellant, as having assumed the obligations of the contract. The provision of the contemplated lease which restricted the power of the lessees to transfer their rights in the lease without the consent of the association in writing, added nothing to the financial obligation of the lessees, and did not alter the terms upon which rents were to be paid. We are not satisfied that the court below committed any error for which this cause should be reversed.

The judgment is, therefore, affirmed.

