BELFAST SAV. BANK v. STOWE et al.

(Circuit Court of Appeals, First Circuit. January 19, 1899.)

No. 242.

1. ASSIGNMENTS FOR CREDITORS—RECORD—ATTACHMENT.

That the assents of creditors to an assignment by a debtor in Massachusetts were subsequent to the recording of the deed of assignment in Maine, where real estate of the assignor was situated, so that the record did not exhibit such assents, did not prevent the record from operating as notice to creditors attaching the land after such assents were given.

2. CONSTITUTIONAL LAW—DISTRIBUTION OF ASSETS OF INSOLVENT—LOCAL RULE DISCRIMINATING AGAINST NONRESIDENTS.

A local rule of law, which has been maintained by the courts of a state, to the effect that a foreign assignment by an insolvent will not operate on property in the state, so as to defeat an attachment made by a resident, is expressly annulled by Blake v. McClung, 172 U. S. 239, 19 Sup.

Ct. 165, in so far as it discriminates against citizens of other states, and it cannot be presumed that the rule, as necessarily limited by Blake v. McClung, would be reaffirmed by the local courts. Therefore it is held that the entire rule is abrogated, and that it can no longer be accepted in any part.

In Error to the Circuit Court of the United States for the District of Maine.

This is an action at law by William E. Stowe and others against the Belfast Savings Bank, and involves the validity of an attachment and sale thereunder on certain land claimed by plaintiffs as trustees under an assignment for the benefit of creditors. In the court below, the case was submitted on an agreed statement of facts, and the court held that the assignment took precedence over the defendant's attachment. 92 Fed. 90. Defendant thereupon sued out this writ of error.

Joseph W. Symonds (William H. Folger, on the brief), for plaintiff in error.

Edward Woodman (Anthoine & Talbot, on the brief), for defendants in error. ,

Before PUTNAM, Circuit Judge, and BROWN and LOWELL, District Judges.

PUTNAM, Circuit Judge. The title to land in Maine is in dispute. The defendants in error claim as trustees under a voluntary assignment for the benefit of creditors, made by George W. W. Dove, of Andover, in Massachusetts, to John C. Ropes, of Boston, in the same state. The present defendants in error succeeded to the title of Ropes. The Belfast Savings Bank, a corporation created by the laws of Maine, plaintiff in error, claims title through an attachment and an execution sale, as the result of a suit against Dove on his indebtedness to it. The attachment was made after the assignment, and after it had been assented to by creditors whose claims were sufficient to absorb the assets covered by it. The bank, nevertheless, contends that its attachment, though later in time than the assignment and its recording in the registry, takes precedence thereof. This contention is based on the rule announced in Fox v. Adams, 5 Me. 249, decided by the supreme judicial court of Maine in 1828. In that case the attachment was held to give a title superior to a prior foreign assignment for the benefit of creditors, upon the ground that a general assignment, made by an insolvent debtor in another jurisdiction, will not be permitted to operate upon property in the state, so as to defeat the attachment of a creditor residing there. As explained in the opinion of the learned judge who sat in the circuit court, the details of the execution and registration of the assignment conformed in all respects to the local statutes. The only special objection which appears on this score is that, inasmuch as the assents of creditors becoming parties to the assignment were subsequent to the record in the registry of deeds, the record did not exhibit the assents, and therefore it was not a statutory notice to creditors asserting adverse interests. But the law is so plain oth-

erwise that this proposition needs no discussion, the circumstances being entirely analogous in this respect to the recording of a mortgage, securing bonds or notes which are shown plainly on its face, but which are issued after the mortgage is recorded, and before any hostile attachment or execution is made or levied.

The only substantial question in this case arises from the alleged local rule announced in Fox v. Adams. This rule was fully stated in Chafee v. Bank, 71 Me. 514, 524, 526. That, by virtue thereof, the assignment in this case was not invalid, appears at page 526: "We think it is clear that the recognized rule in this state is to uphold foreign assignments, except as against our own citizens." In this extract the word "citizens" is used; while in various places where the rule is stated, and even elsewhere in the opinion in Chafee v. Bank, in lieu of the word "citizens," expressions are used which indicate mere residents. There can be no question that the two expressions, "citizens" and "residents," have been used in this connection synonymously. The full rule is stated at pages 524 and 525, as follows:

"In Fox v. Adams, 5 Me. 245, the court held that an assignment made by an insolvent debtor in another jurisdiction would not operate upon property in this state, 'so as to defeat the attachment of a creditor residing here.' But the court did not decide that such an assignment would not defeat the attachment of a creditor who did not reside here. On the contrary, the doctrine is stated as an exception to the general rule. It is an exception in favor of domestic creditors only. The language of the court clearly implies this. 'Comity between states is not thus to be extended, to the prejudice of our own citizens.' Such is the language of the court; and we think it clearly implies that, while a foreign assignment will not be permitted to defeat the attachment of a domestic creditor, it will have that effect upon foreign creditors. The reason of the rule clearly implies this. It is the supposed duty of every government to protect its own citizens, a duty which it does not owe to foreigners."

Therefore the position under the local rule in question is, as we have already said, that the assignment stands, and that the local law does not assume merely the exclusive right of administering assets of an insolvent within its jurisdiction, so as to save residents of the state from being compelled to go into foreign jurisdictions to obtain their due proportions thereof, but asserts a priority over nonresidents, including, of course, citizens of other states. It administers the property within its jurisdiction, through the instrumentality of attachments and levies on execution, so as to give this priority to its own residents. Whether or not a local rule of this kind comes in conflict with the constitution of the United States was not urged in the circuit court, although the question was there referred to; and it has not been submitted to us. But the decision of the supreme court (rendered since this case was argued) in Blake v. McClung, 172 U. S. 239, 19 Sup. Ct. 165, is so far-reaching in its character, and relates to such substantial matters, that we are not at liberty to overlook it. For us to do otherwise would involve us in an apparent acceptance of results thus pronounced by the highest authority to be fundamentally erroneous.

Blake v. McClung relates to the distribution of the assets of an insolvent corporation, which, for the purposes of the case, might

well be regarded as a corporation of Tennessee. The statutes of that state provide that, in the distribution of the assets of corporations in cases of insolvency, residents of Tennessee shall have priority over all simple contract creditors who are nonresidents, and over certain other classes of creditors to which we need not refer. Certain creditors of the corporation who were citizens of Ohio challenged the constitutionality of this statutory provision. The supreme court places its decision on section 2 of the fourth article of the constitution, providing that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." First of all, the court turns its attention to the word "residents," found in the Tennessee statute; and, without following out the reasoning of the court, it is sufficient to say that the citizens of Ohio who were litigants in the case are held by it to be covered by that word, and the court finds that the statute is unconstitutional so far as they are concerned. Some question being made in behalf of the Tennessee creditors arising out of the fact that the debtor was a corporation, the opinion says: .

"If a state should attempt, by statute regulating the distribution of the property of insolvent individuals among their creditors, to give priority to the claims of such individual creditors as were citizens of that state over the claims of individual creditors citizens of other states, such legislation would be repugnant to the constitution, upon the ground that it withheld from citizens of other states as such, and because they were such, privileges granted to citizens of the state enacting it."

Then the opinion inquires whether a different principle would apply with reference to the assets of a corporation, and it holds that it would not. It is thus clear that the court is of the opinion that, beyond doubt, statutes of the kind in question, applied to the assets of an individual, as in the case at bar, are clearly unconstitutional so far as they affect citizens of other states; and such is the logic of the decision.

It is not necessary for the purposes of the case at bar that we should follow out what was said in the opinion, or covered by the decision, with reference to residents of other states than Tennessee, not citizens of those other states, or with reference to aliens. All we need to say is that, as to this, the result was left so far indeterminate that we would not be justified in holding that the article of the constitution referred to would render invalid any priority which the statute of Tennessee, or the local rule in Maine, might give to residents over any class of persons who are not citizens of other states.

It remains for us to apply Blake v. McClung to the case at bar. As we have already said, the question of the constitutionality of the alleged local rule in Maine was not pressed in the circuit court, and has not been raised before us; and it was very suitable that it should not have been. The facts appearing in this record are not of a character to raise the sharp question of constitutionality determined in Blake v. McClung, because there is nothing here to show that the creditors who assented to the assignment, and over whom the plaintiff in error claims priority, are citizens of any state. In-

deed, for this reason, it may well be questioned whether the record states sufficient facts to raise the question of the applicability of the local rule in Maine in any event, if its existence were admitted.   The question which we have to consider flows out of the decision of the supreme court in the case referred to, and leads to affirming the judgment of the court below, independently of the fact of the citizenship of the assenting creditors.   If, in consequence of Blake v. McClung, we must hold that there is no local rule as stated in Fox v. Adams, the assignment must prevail beyond doubt.   The position of the case is as follows:   In Blake v. McClung the rule was established by statute.   Therefore it follows that the rule, being statutory, could not be set aside except with reference to cases where its application would deprive parties in interest of rights secured them under the constitution.   With reference to all other conditions, the statute must necessarily be allowed to stand.   The same would be the case on the hypothesis that the local rule in Maine was also the creature of statute.   But as, on the other hand, we have in Maine only a supposed rule of the common law, the maxim, "Cessante ratione legis, cessat ipsa lex," broadly construed, applies.   This maxim, as interpreted by Broom, lays down the following broad principle: "Reason is the soul of the law, and, when the reason of any particular law ceases, so does the law itself."   The decision in Blake v. McClung destroys at least the symmetry of the alleged local rule; and, applying the maxim referred to, it is beyond a reasonable possibility to suppose that, after the supreme court had declared its substance to be in violation of the constitution, the state courts could reaffirm it as a principle of law with reference to its remnants, so far as those remnants might give priority to resident creditors over nonresidents not citizens of other states.   Under the circumstances of the case, we cannot do otherwise than hold that a decision of the sweeping effect of Blake v. McClung, declaring the substantial portions of a local rule of this character unconstitutional, will compel the acceptance of the conclusion that the entire rule is abrogated, and is no longer to be accepted in any part.

The judgment of the circuit court is affirmed, and the costs of this court are awarded to the defendants in error.