**TORRINGTON CO. v. SIDWAY-TOPLIFF CO.**

**McCLANE et al. v. JOHNSON & BIDDLE TOOL CO. et al.**

**No. 4890.**

Circuit Court of Appeals, Seventh Circuit.
April 28, 1934.

Rehearing Denied June 21, 1934.

A. P. Weitzel, of Pittsburgh, Pa. (Clair McTurnan and William R. Higgins, both of Indianapolis, Ind., on the brief), for appellant.

S. J. Crumpacker and George N. Beamer, both of South Bend, Ind., for intervening appellants.

Harman & Wider and Verne G. Cawley, all of Elkhart, Ind., and Louis M. Hammerschmidt, of South Bend, Ind., for appellee interveners.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

The questions here involved arise in an ancillary equity receivership case instituted in the Northern District of Indiana. The original equity proceedings were instituted in the United States District Court for the Western District of Pennsylvania, March 1, 1930. The bill was filed in the Northern District of Indiana, March 4, 1930, where the receiver in the primary case in Pennsylvania, M. W. McClane, and St. Joseph Valley Bank of Elkhart, Ind., were appointed ancillary receivers of the Indiana assets of the insolvent corporation, Sidway-Topliff Company, a Pennsylvania corporation. The receivers took possession of all the Indiana assets of the corporation.

Later, September 22, 1931, the insolvent corporation was adjudged a bankrupt in the Pennsylvania court and M. W. McClane was elected trustee in bankruptcy. The primary receiver turned over all of the assets in his hands to the trustee in bankruptcy and the trustee filed a petition in the Indiana case for an order on the ancillary receivers to turn over all the assets in their hands to him, as trustee.

A final report of the ancillary receivers was filed, in which they asked for authorization to surrender all the assets in their hands to the trustee in bankruptcy. Objecting gen-

eral creditors and the alleged secured creditors petitioned, and the court granted, leave to intervene and to file their petition resisting the prayer of the receivers to surrender the assets in their hands except upon condition that they, the general creditors and alleged secured creditors in Indiana, first be paid in full out of the Indiana assets, by the ancillary receivers. The District Court entered a decree requiring full payment of the Indiana creditors' claims from the Indiana assets, and directed that a surrender thereafter be made of the remaining assets to the trustee in bankruptcy. From that decree this appeal is taken.

The question primarily involved is as to whether Indiana creditors, citizens or residents of Indiana, domestic corporations, or foreign corporations licensed to do business in Indiana, could lawfully be given priority of payment out of the Indiana assets of the insolvent corporation, and over creditors of the same classes who were citizens or residents of other states of the United States.

The Indiana court, in the order of March 14, 1931, limited the time for filing claims with the ancillary receivers to June 14, 1931, permitting claims to be filed only by Indiana creditors, who were defined in the order as, corporations organized and existing under the laws of the state of Indiana, foreign corporations registered to do business in Indiana, and citizens or residents of Indiana.

Appellees are all Indiana creditors within the description of the order. Of the nineteen appellees, four were claiming mechanics' liens, for the determination and foreclosure of which suits were, and are, pending in the state courts, and two were municipal corporations with tax claims. Appellees (general creditors) predicate their claim of right to full payment out of the Indiana assets upon the fact that they furnished goods and credit to the Indiana plant and were therefore entitled to priority of payment out of the Indiana assets and over creditors, domiciled in other states, furnishing goods or credit to the insolvent. The other secured and lien claimants added to the foregoing theory the further basis for right to priority because of unadjudicated mechanics' liens and tax liens in their favor; and both the secured and unsecured creditors advanced the theory that they were entitled to priority in the Indiana assets because one of the ancillary receivers, M. W. McClane, refused to petition the Indiana court to pay the Indiana creditors in full after the other ancillary co-receiver, St. Joseph Valley Bank

of Elkhart, had promised such petition would be filed, and such unfulfilled promise caused the creditors to delay filing their petition seeking full payment until after the Sidway-Topliff Company had been adjudicated a bankrupt.

In the course of the administration of the estate in Indiana, the suggestion was made to the St. Joseph Valley Bank that, under the law of Indiana, creditors within the class described and limited by the decree were first entitled to be paid in full out of the assets of the bankrupt corporation in the hands of the ancillary receivers. The matter was submitted to the Indiana attorney for the ancillary receivers, and as a result he advised the District Court he was about to prepare a petition requiring the ancillary receivers to pay all the Indiana creditors in full before turning over any of the assets of the insolvent corporation to the trustee in bankruptcy, and inquired of the court whether in its opinion the Indiana creditors were entitled to be so paid. He was informed by the court that, while the court was not familiar with the law on the subject, it would grant such petition, if filed, and if there was no objection. The assets in the hands of the ancillary receivers were at that time sufficient to pay in full all the claims of the Indiana creditors, and constituted approximately one-half of the total assets of the bankrupt at the time the receivers were appointed.

The funds from which it was proposed to pay the Indiana creditors in full were those arising from the sale of the unmortgaged Indiana assets of the insolvent. The St. Joseph Valley Bank brought to the attention of M. W. McClane, its co-receiver, and later the trustee in bankruptcy, the proposal to pay the Indiana creditors in full, and McClane took the position that, if it were the law, he might join in the petition to the court for authority to make the adjustment. The matter dragged along for a while, when counsel for the Indiana ancillary receivers wrote to McClane asking him to sign the petition and return it. At the time the petition was presented, the Pennsylvania counsel for the primary receiver was away and could not give the matter his immediate attention. McClane wrote to the Indiana counsel that his attorney would answer his letter. Pending the delay caused by the absence of the Pennsylvania counsel, the Indiana creditors intervened. The cause went to a hearing upon the petition, with the result the court found all of the intervening petitioners were entitled to have their claims, aggregating many thousands of dollars, paid

in full by the ancillary receivers. It found that the city of Elkhart and the treasurer of Elkhart county had a first lien on all the real and personal property in the hands of the ancillary receivers, the taxes assessed during 1931 becoming by law such a lien on March 1, 1931, and delinquent by reason of nonpayment on the first Monday in May, 1932; that the taxes assessed for the year 1932 became a lien by law on March 1, 1932; that said taxes were then payable and would become delinquent on the first Monday in May, 1933. This finding of the court was filed July 27, 1932.

Among the court's findings were these:

"The court further finds that the failure of the said M. W. McClane, one of the ancillary receivers herein, to sign said petition and carry out said agreement to file in this court, said petition for the payment of the claims of the Indiana creditors, constituted bad faith and fraud, as to the intervening petitioners herein, and said bad faith and fraud on his part, prevented the Indiana creditors, and especially the intervening petitioners herein from obtaining an order from this court for the payment of their claims in full, in this court.

"The court further finds that at the time said petition would have been filed and said order entered, there was sufficient money in the hands of the ancillary receiver, St. Joseph Valley Bank, in the city of Elkhart, Indiana, from the sale of the assets of the Indiana plant, as aforesaid, to have fully paid each and every claim of the intervening petitioners herein, and, but for such bad faith and fraud on the part of the said M. W. McClane, one of the ancillary receivers herein, each of said intervening creditors would have received the payment of his claims in full, in accordance with the petition prepared by one of the ancillary receivers, or the petition of certain of the intervening petitioners, which they were ready to and would have filed, but for said agreement made by the attorneys of record for the ancillary receivers."

Numerous errors are assigned which space will not permit to be reproduced here, many of them based upon the allowance of claims asserted by the intervening petitioners against the insolvent company in contravention of the Constitution of the United States; that it was error to hold that general creditors' claims for goods sold or labor furnished by Indiana creditors, and used in the plant or manufacturing business of the bankrupt in Indiana prior to receivership, were entitled to priority of payment out of the assets of the receivership in Indiana and over other general creditors; it was error to give effect to any alleged priority, except such priority as was based on a statutory materialman's or mechanic's lien where the statutory requirement for creating and protecting the lien and establishing the amount had been fulfilled by the claimant; and that the court improperly allowed attorneys' fees presented with claims for materialmen's and mechanics' liens, which had been filed in the state courts, but had not submitted any evidence to the court that their liens or fees had been adjudicated or allowed.

Error is assigned as to the order of payment of the taxes on real estate which was a part of the assets of the receivership and which was then mortgaged, at the expense of the general creditors, thereby relieving the owners of the mortgage from protecting their security, and before the trustee in bankruptcy had an opportunity to accept or reject the real estate, and in requiring the present payment of taxes for the year 1932, payable in 1933, and in denying the motion of the trustee to modify the court's findings.

The court is alleged to have erred in finding the ancillary co-receiver, McClane, guilty of fraud or deceit, and in refusing to modify the findings of fraud or deceit, and in refusing to make such modifications in the decree as modifications of findings would entail.

On March 14, 1931, the District Court ordered all of the Indiana creditors of the insolvent "to bring in and present to said receivers, in writing, at the offices of the St. Joseph Valley Bank at Elkhart, Ind., their several claims and demands and make proof thereof upon oath to the satisfaction of the receivers within three months from the 14th day of March, 1931 * * * that in default thereof, any such creditors or claimant shall be barred from participating in any distribution which this court or the District Court of the United States for the Western District of Pennsylvania may thereafter make of the funds, assets and properties of the Sidway-Topliff Company; said order, however, to be without prejudice to said receivers or to this court to remit to the District Court of the United States for the Western District of Pennsylvania such of the claims presented and filed in accordance with this order as this Court may direct to be remitted for the purpose of having that court pass upon the question of allowance thereof or distribution thereon."

Under that order the ancillary receivers took possession of all of the Indiana assets

of the insolvent corporation and endeavored to conduct the business for awhile, but found it unprofitable and closed it down, marshaled the assets, paid all the receivers' expenses, and filed a petition to turn over and deliver all of the assets in their hands to the trustee in bankruptcy.

The ancillary receivership was practically at the closing point when the intervening petition of appellees was presented. Evidence was heard by the court; the court filed findings of fact and entered the order of distribution above described. When the nature of the findings and holdings became known to McClane, primary receiver and, later, trustee, he filed a motion asking for a modification in the findings of fact and made a very strong prima facie showing, but the motion was denied.

▇▇▇ The essential question involved in this review is whether or not it is within the power of a federal court sitting in equity to grant creditors, residents of the local state, general and secured rights in the assets of an insolvent corporation located in such state, superior to the rights of creditors similarly situated, residents of other states.

When the Fourteenth Amendment was written, one of its important provisions was to require states to give equal protection by their laws to citizens of other states. A federal court sitting in equity and managing the estate of an insolvent debtor applies the principles of equity in the marshaling of the assets and the distribution of the proceeds among the general creditors, recognizing valid established liens on specific property or liens created by the local laws of the state in which the property is located. Equal, proportional distribution of the assets of such a corporation among the general creditors is the purpose and rule of receiverships and an ancillary receivership does not escape the equitable responsibility or force of the rule.

It has been held that state statutes which attempt to give to creditors, incorporated in, or authorized as, foreign corporations doing business under the laws of any state, or citizens or residents of said state, a right to prior payment out of assets of the insolvent debtor in that state and which would deny the same right to corporations organized or authorized as foreign corporations to do business under the laws of other states, or citizens or residents of such other states, is in contravention of the Constitution of the United States, particularly, article 4, § 2, cl. 1, and article 1, § 8, cl. 3, and the Fourteenth

Amendment thereof. Blake v. McClung, 172 U. S. 239, 253, 19 S. Ct. 165, 43 L. Ed. 432; Sully v. Amer. Nat. Bank, 178 U. S. 289, 303, 20 S. Ct. 935, 44 L. Ed. 1072; Brunner v. New York Bridge Co., 78 W. Va. 702, 707, 90 S. E. 233, 4 A. L. R. 643; Bement Oil Corp. v. Cubbison, 84 Ind. App. 22, 25, 149 N. E. 919. The same rule applies in case of a local rule or decision. Belfast Savings Bank v. Stowe (C. C. A.) 92 F. 100; So. Ry. Co. v. Greene, 216 U. S. 400, 412, 30 S. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247.

An Indiana creditor by reason of his citizenship, residence, incorporation, or authorization, is not entitled to priority over other creditors, citizens or residents of other states, out of the Indiana assets of their common debtor. Blake v. McClung, supra; Chicago, R. I. & P. Ry. Co. v. Lincoln Horse & Mule Comm. Co. (C. C. A.) 284 F. 955; Franklin Nat. Bank v. Whitehead, 149 Ind. 560, 580, 581, 49 N. E. 592, 39 L. R. A. 725, 63 Am. St. Rep. 302.

It is not only well established, but fundamental, that an Indiana creditor has no greater right than any other creditor by virtue of his residence, in the Indiana assets of their common debtor, and the petition of the intervening creditors could have been denied on motion or stricken by the court of its own motion.

▇▇▇ As to the alleged liens of mechanics or materialmen, under the Indiana statute, a lien claimant is entitled to give notice of his lien or claim by recording the same, but the validity, existence, and enforceability of such lien can only be adjudicated by proceedings in courts of law for the determination and foreclosure thereof on the real estate. Benefit of notice of lien and claim of lien is lost unless suit is filed within one year. Burns' Ann. St. Ind. 1926, § 9835, 1909 Acts of Indiana, pp. 295, 296, 297, c. 116, § 5.

▇▇▇ Appellees Electric Supply Company (Hugh Castetter and partner) and Elkhart Roofing Company (Charles L. Blue) were not entitled to priority as mechanics' lien claimants in the absence of allegations and proof that such liens had been determined and adjudicated, or that their claims of liens were pending and unadjudicated and undetermined in suits brought in the state court in apt time for the purpose of enforcing and foreclosing their alleged liens (Burns' Ann. St. 1926, Sections 9835, 9832), and they were not entitled to priority of payment out of the proceeds of personal property, because their liens, if any, were on the real property

which was unsold. For the same reason such claimants as the above-mentioned appellees were not entitled to priority of payment on account of attorney's fees or costs accruing to that date, or by reason of their pending and unadjudicated suits brought in the state court for the purpose of adjudicating and foreclosing said liens.

■ Appellees Elkhart county and city of Elkhart were not entitled to priority of payment for taxes in so far as said taxes became a lien and were payable after June 14, 1931, the time fixed for filing claims with the receivers. Burns' Ann. Stat. 1926, § 10958; 1932 Indiana Acts (Sp. Sess.) c. 9, p. 17, §§ 1, 4. Neither Elkhart county nor city of Elkhart was entitled to payment of taxes which were not due and payable and which were unlevied and unascertained at the time their claims were filed with the receivers, or at the time of the decree, and which for that reason were not then allowable or enforceable claims in any court against either the insolvent or the receivers. It is clear that the tax of both the county and city of Elkhart for the year 1932 were payable in 1933, and on June 14, 1931, and at the time of the decree, both were unascertained in amount, unlevied and unconfirmed by the Board of Tax Adjustment, and were not enforceable claims against the receivers or the assets of the receivership.

■ It is inequitable and unjust to order payment out of personal property assets of taxes accruing, or to accrue, or the real property of one adjudged a bankrupt in the light of the facts in this case. Such taxes are a lien on the real estate, and where it is subject to a mortgage, there is the possibility that upon investigation and examination the trustee may petition the bankruptcy court for an order directing him to disclaim the mortgaged real estate as burdensome upon the estate and to direct the trustee to abandon it.

■ It appears from the pleadings that there was a very substantial bond issue secured by a mortgage upon the chief real estate asset of the ancillary receivership and that there may have been some unpaid taxes. The burden was upon the mortgagee to see that the taxes were paid, if it cared to protect its interest in the property. There is no equitable rule by which the personal property assets of a bankrupt estate may be exhausted in order to protect the mortgage, and, if the receivers or trustee saw fit to so exhaust the personal assets of the insolvent or bankrupt estate and make such payment,

they would do so at their own hazard. Every tax or lien thereof, valid under the laws of Indiana, is protected and enforceable in bankruptcy.

■ The refusal of McClane as ancillary co-receiver to join the St. Joseph Valley Bank in a petition for full payment of Indiana creditors, out of Indiana assets, would not constitute a fraud upon any of the appellees, because it deprived them of no substantial right, even though he had promised to do so, which he denies. See Bankruptcy Act, 11 USCA § 104; In re William F. Fisher & Co. (D. C.) 148 F. 907; In re Harvey (D. C.) 122 F. 745.

■ As to open account creditors: There is no statute or decision in Indiana providing or holding that a creditor furnishing goods or credit to a manufacturing corporation in Indiana, for use, and used, in manufacture, is thereby entitled to a lien, or, in the event of the insolvency of the debtor, to priority of payment out of manufactured products, raw materials, goods in process, accounts receivable, cash in bank, or any other real or personal property of the debtor in the state. The Franklin National Bank v. Whitehead, 149 Ind. 560, 581, 49 N. E. 592, 39 L. R. A. 725, 63 Am. St. Rep. 302; St. Joseph Hydraulic Co. v. Wilson, 133 Ind. 465, 474, 33 N. E. 113.

■ One of the more serious assignments of error is the refusal of the court to grant the motion of McClane, trustee, to allow a reconsideration and modification of the court's findings of fact of June 27, 1932. The motion was verified and clearly brings to the attention of the court that one of its own officers has been adjudicated guilty of fraud, the fraud consisting of his claimed promise to join his ancillary co-receiver in a petition for an order directing them to pay the Indiana creditors in full, out of the Indiana assets, and then not signing the petition; the verified motion states that he never at any time agreed to join in the execution of such a petition, but that he conceived it his duty to represent all of the general creditors of the insolvent; that he was advised by counsel his responsibilities were unquestionable and to do so would be inequitable and unjust to creditors other than those of Indiana. The finding holds the co-receiver guilty of fraud and misconduct for not doing that which he had no right to do.

Furthermore, McClane's motion to restate the findings of fact brought to the court's attention that the Indiana creditors, in their petition asking for payment of their claims

in full out of the Indiana assets and claiming a priority, based on the fact that they were Indiana creditors and the assets were Indiana assets, did not allege that any representation or intimation had ever been made to such petitioners by McClane that he would approve or propose full payment of said claims, or that he did anything of any kind or character to influence the filing or nonfiling of claims by such Indiana creditors for payment in full thereof.

It is also affirmatively shown in McClane's motion that he "had no knowledge from anything in the proceedings before this court or otherwise to lead him to believe or to suppose that any personal issue of fraud or deceit was raised against him in any manner; that had he supposed that any such personal issue would be raised or that any but a question of law was presented by any proceedings herein he would have made specific and positive denial thereof and would have presented to this court the full facts so that the court might determine from all the facts whether said M. W. McClane had not conducted himself with propriety; * * * that neither the pleadings or petition nor statements of facts made in briefs nor any other source of facts or record in this court in these proceedings, disclose any facts upon which a finding of fraudulent intent or act can be predicated in the findings of this court heretofore filed in respect of said petition to surrender to said trustee in bankruptcy said final report or said petitions for full payment of Indiana creditors * * *."

If McClane was to be tried for fraud and deceit in this case, some proper charge should have been made and he should have been given at least an opportunity to be heard.

The distribution of the assets in bankruptcy differs very slightly from the distribution of insolvent debtors' estates in equity. In either event, it is, and must be, an equitable distribution. The property and funds of the insolvent debtor are in custodia legis, for the benefit of those to whom they rightfully belong. It makes little difference whether the distribution takes place in bankruptcy or in equity, although the processes prescribed by the Bankruptcy Act are more expeditious. To illustrate: The real estate which is mortgaged to secure $300,000 in bonds, and upon which there have accrued liens for unpaid taxes, may under the Bankruptcy Act be sold by the trustee free and clear from all liens and encumbrances and the liens attach to the proceeds of the sale; it may be sold subject to the liens, or it may be entirely disclaimed by the trustee as burdensome property. Had this ancillary receivership been permitted to proceed as it was going at the time of interruption by the intervening Indiana creditors, the estate would long since have been closed and expenses of administration very greatly minimized.

Under the Bankruptcy Act there is no possibility of real property escaping its liability for taxes and legitimate liens; they are as fully protected as in a court of equity to the extent of the value of the property. In order to make an equitable distribution, it is necessary for those claiming priority to establish their right thereto by hearings in court. It is then necessary, after finding the amount of the priorities, to ascertain the sum available for general creditors, without respect to the state or states of their residence, and then make a proportionate, equitable distribution of the remainder among the creditors.

The bankruptcy court not only has jurisdiction of all the assets within the district of the domiciliary court, but it, too, can authorize ancillary proceedings where necessary to preserve property rights, and when the trustee is elected by the creditors, all the rights and all the title of the bankrupt in the property, wherever situated, are vested in the trustee. It seems that the notion that the Indiana creditors had superior rights to the satisfaction of their claims in full out of the Indiana property came from the ancillary co-receiver, St. Joseph Valley Bank, and, strangely, that co-receiver also appears as one of the intervening petitioners, asking an allowance of $1,594.51, which was ordered paid in full by the decree complained of.

The finding that primary receiver McClane, who was also the ancillary co-receiver, was guilty of fraud in the premises, appears to be unwarranted as far as the record in this case discloses. As we said before, it makes little difference whether the distribution in this case is made in bankruptcy or in equity, but in either event it must be proportional, fair, and equitable.

The decree must therefore be set aside. Any claim allowed must be proved meritorious according to the usual processes. The rights of creditors, lienholders or otherwise, cannot be disposed of by agreement, for the funds are trust funds and must go to those rightfully entitled thereto.

The decree will be set aside and the cause remanded, with directions to strike the intervening petitions from the files and to proceed

without regard thereto. If the court should conclude to have proper proof made with reference to the several claims involved, the cause may be referred to a referee or special master for that purpose, or the receivers directed to transfer all of the assets in their hands to the trustee in bankruptcy, that they may be passed upon and allowed or rejected in the regular way.

Reversed and remanded for further proceedings in consonance herewith.