## SULLY *v.* AMERICAN NATIONAL BANK.

ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 266.   Argued April 26, 1900. — Decided May 28, 1900.

Bills were filed in Tennessee by the American National Bank and others against the Carnegie Land Company, a Virginia corporation, doing business in Tennessee under the provisions of the act which was under review in *Blake* v. *McClung*, 172 U. S. 239; 176 U. S. 59; and also against various creditors of that company. The prayer of the bill was that it might be taken as a general creditors' bill; and it was alleged that the company was insolvent, having a large amount of property in the State which it had assigned for the benefit of its creditors, without preferences, which was in disregard of the statute of the State, that a receiver should be appointed, the assets marshaled and the creditors paid according to law. The company answered denying that it was insolvent, and claimed that the assignment should be held valid, and the trust administered by the assignees. During the pendency of the suit, Sully and Carhart, New York creditors, filed a bill, setting up that nearly all the assets, if not all of them, in the hands of the assignee of the company, and sought to be impounded by the bill filed by the bank, were covered and conveyed to Sully, as trustee, and that Carhart was entitled to priority over all other creditors of the defendant in the appropriation of the assets covered by the deed of trust to Sully. They asked for leave to file that bill as a general bill against the land company, or, if that could not be done, that they might file it in the case of the bank against the land company, as a petition in the nature of a cross-bill against that company. Other proceedings took place which are set forth in detail in the statement of the case. They ended in the consolidation of the various proceedings into one action and a reference to a master to take proof of all the facts. The master made his report, upon which a final decree was entered. It was decreed that the land company, by its

deed of general assignment, of June 3, 1893, in making disposition therein for the payment of its creditors, without any preferences, attempted to defeat the preferences given by law to creditors, residents of Tennessee, over non-resident creditors and mortgagees, whose mortgages were made subsequent to the creation of the debts due resident creditors, and that such deed was fraudulent in law, and void; that the making of the deed was an act of insolvency by the land company, and that the bill filed by the bank was properly filed, and should be sustained as a general creditors' bill, and that the assets of the company under the jurisdiction of the court were subject to distribution under the law relating to foreign corporations doing business in Tennessee, and as such should be decreed in the action then pending. The decree further adjudged that Carhart was a *bona fide* holder of the bonds mentioned in his bill, and that he was entitled to recover thereon as provided for in the decree, but subject to the payment of debts due residents of Tennessee prior to the registration of such mortgage. It was also decreed that the Travelers' Insurance Company by its mortgage acquired a valid lien upon the property covered by it, subordinate, however, to debts due residents of Tennessee contracted prior to the registration thereof, and also subject to some other liabilities of the land company. The case was taken to the Court of Chancery Appeals, which modified in some particulars the decree of the chancellor, and after such modification it was affirmed. Upon writ of error from the Supreme Court the case was there heard, and that court held that the statute in question, providing for the distribution of assets of foreign corporations doing business in that State, was constitutional, and was not in contravention of any provision of the constitution of the United States. The decree of the Court of Appeals was, after modifying it in some respects, affirmed. The case was then brought here on writ of error. *Held:*

(1) That on an appeal from a state court the plaintiff in error in this court must show that he himself raised the question in the state court which he argues here, and it will not aid him to show that some one else has raised it in the state court, while he failed to do so; but if he raised it in the Supreme Court of the State, it is sufficient;

(2) That the allegation in Carhart's case that he was a resident of New York is a sufficient allegation of citizenship, no question having been made on that point in the courts below;

(3) That a Tennessee general creditor has the same right of preference as against a resident mortgagee that he has against a non-resident, and the same burden that is placed upon non-resident mortgagees and judgment creditors is by the statute placed upon resident mortgagees and judgment creditors;

(4) That there is no foundation for the claim made, on behalf of Carhart, that section 5 of the Tennessee act of 1877 violates section 1 of the Fourteenth Amendment to the Constitution of the United States, in that it deprives the non-resident mortgagee of his property

without due process of law; but, on the contrary, the question has been decided the other way in *Blake* v. *McClung;*

(5) That there has been no denial by the State of Tennessee of the equal protection of the laws to any person within its jurisdiction.

THE contest in this case arises out of the insolvency of the Carnegie Land Company, a Virginia corporation, doing business at the time of its insolvency in the State of Tennessee under the provisions of the act of the legislature of that State passed in 1877, and which was under review in this court in *Blake* v. *McClung,* 172 U. S. 239 ; 176 U. S. 59.

The contest is between creditors of the company above named, who are non-residents of the State of Tennessee, both those who are unsecured as well as those who are secured by mortgages upon the property of the company in that State, and creditors of such company who are residents of the State.

The questions to be decided arise out of the provisions of the fifth section of the above mentioned act, the material portion of which reads as follows :

" SEC. 5. That the corporations, and the property of all corporations coming under the provisions of this act, shall be liable for all the debts, liabilities and engagements of the said corporations, to be enforced in the manner provided by law, for the application of the property of natural persons to the payment of their debts, engagements and contracts. Nevertheless, creditors who may be residents of this State shall have a priority in the distribution of assets, or subjection of the same, or any part thereof, to the payment of debts over all simple contract creditors, being residents of any other country or countries, and also over mortgage or judgment creditors, for all debts, engagements and contracts which were made or owing by the said corporations previous to the filing and registration of such valid mortgages, or the rendition of such valid judgments. But all such mortgages and judgments shall be valid, and shall constitute a prior lien on the property on which they are or may be charged as against all debts which may be incurred subsequent to the date of their registration or rendition." Acts of Tennessee, 1877, March 21, c. 31, p. 44.

On November 27, 1893, the American National Bank and

others filed their bill against the Carnegie Land Company and various named creditors of that company, and prayed that the bill might be taken as a general creditors' bill against the company on behalf of the complainants and of all the other creditors of the company, and that those named as creditor defendants might represent the class, their number being too great to make them all parties to the bill. The complainants alleged that they were creditors of the land company; that the company was insolvent; that it had a large amount of property in the State; that it had assigned the same for the benefit of its creditors without giving preferences, which was in disregard of the statute of the State, (above referred to,) and asked that the creditors of the company should prove their claims in that suit; that a receiver should be appointed, the assets marshaled and the creditors paid according to law.

To this bill the land company made answer, denying its insolvency, or that it had ceased to do business, or had abandoned its franchises, and claimed that its assignment was good and valid, and that the trust should not be taken out of the hands of its assignee.

During the pendency of this suit Wilberforce Sully and A. B. Carhart, residents of the State of New York, filed a bill against the land company and certain corporations in the State of Connecticut, called the Travelers' Insurance Company and the Connecticut Trust & Safety Deposit Company. The complainants alleged that the Carnegie Land Company had duly determined to issue three hundred thousand dollars worth of bonds, secured by mortgage upon its property in the State of Tennessee, and of that amount of bonds but eighty-five thousand dollars had actually been issued; that Sully was the mortgagee in trust in the mortgage executed by the company for securing the payment of the bonds, and that Carhart was the *bona fide* holder of all of the eighty-five thousand dollars of such bonds; that the mortgage was executed on January 2, 1893, and was duly registered in the office of the register of Washington County, Tennessee, on February 10, 1893; that the interest had not been paid as it became due, and that by virtue of a provision of the mortgage the whole principal sum had become due and

payable, and that the land company was in default in the payment of the principal and interest due on such bonds. The bill alleged the commencement of the suit already spoken of, brought by the American National Bank and others against the land company, and it alleged that nearly all of the assets, if not all of them, in the hands of the assignee of the company, and sought to be impounded by the bill filed by the American National Bank, were covered and conveyed to the complainant Sully, as trustee, and that the complainant Carhart, the holder of the outstanding bonds, was entitled to priority over all other creditors of the defendant in the appropriation of the assets covered by the deed of trust executed to Sully, as above stated. Complainants prayed that they might be allowed to file this bill as a general bill against the land company, or if for any reason this could not be done, that they should be allowed to file the same in the above cause of the bank against the land company and others as a petition in the nature of a cross-bill against the said company.

To this bill the complainants in the first bill, the American National Bank and others, made answer, and denied that the land company had ever executed any mortgage or that any bonds were ever issued under any mortgage, and denied that the land company ever in any way or manner, either in law or in fact, authorized the issuing of any bonds under such mortgage, or to be secured thereby, and they denied that any such bonds constituted any binding obligation as against the land company.

The bank also alleged that if the bonds to the extent of eighty-five thousand dollars had in fact been issued, yet still the debts sued on by the bank and its co-plaintiffs in the first bill above mentioned were contracted by the land company, and were incurred long before the execution and registration of the mortgage securing such bonds, and therefore they claimed that the debts owing to citizens and residents of Tennessee prior to the execution and registration of the mortgage, above mentioned, should have priority under the law over any debts secured or pretended to be secured by the mortgage.

The Travelers' Insurance Company and the Connecticut Trust

& Safety Deposit Company also filed an answer to the bill of
Sully and Carhart, in which the Travelers' company alleged
that the land company was indebted to it in the sum of $30,000,
and three years' interest, and in other sums amounting to sev-
eral thousand dollars, which amount was secured by a mort-
gage or deed of trust to the Connecticut Trust and Safety De-
posit Company on what is known as the Carnegie Hotel property,
which is a portion of the property of the land company, and is
situated in the State of Tennessee. It also denied the existence
of the bonded indebtedness claimed on the part of complain-
ants, and alleged that in any event the debt of the Travelers'
company against the land company was older than, and the
mortgage to the Trust Company was prior to, that of the com-
plainants Sully and Carhart, and it denied that these last-named
parties had any debt as claimed by them or a lien of any kind
on the property of the land company.

The insurance company also filed a petition in the suit brought
by the bank, in which it set up the existence of its mortgage,
and also prayed to be allowed to become a party to that cause,
and to have its note, which was secured by the mortgage,
declared a preferred claim, and decreed to be paid in full out
of the proceeds of the sale of the property specifically mort-
gaged to it.

An amended petition was filed by it, in which it alleged that
it was the owner of another claim against the land company
in favor of P. Fleming & Company, for a little less than two
thousand dollars, under the circumstances mentioned in the
petition.

October 11, 1895, Mary P. Myton and A. B. Carhart filed a
petition in each of the above suits, in which they described them-
selves as Mary P. Myton, a resident of the State of New York,
and A. B. Carhart, a resident of the city of Brooklyn. In that
petition Mary P. Myton alleged a claim against the land com-
pany, as existing on November 27, 1894, in the sum of $4094.54,
with interest from November 27, 1892; while A. B. Carhart
alleged a claim as of the date of November 27, 1894, of $2248.66,
and they asked to become parties to the above named causes,

for the purpose of setting up these demands, and for a decree against the company for their amounts, with interest.

(It is stated that the two debts represented by these notes were actually in existence prior to the execution of the mortgage to secure the bonds owned by Carhart; the notes being, in truth, renewals of other ones executed prior to that time.)

These various proceedings were consolidated into one action, and the case was referred to a master to take proof of all the facts. The master made his report, upon which a final decree by the chancellor was entered. It was decreed that the land company, by its deed of general assignment, of June 3, 1893, in making disposition therein for the payment of its creditors, without any preferences, attempted to defeat the preferences given by law to creditors, residents of Tennessee, over non-resident creditors and mortgagees, whose mortgages were made subsequent to the creation of the debts due resident creditors, and that such deed was fraudulent in law, and void; that the making of the deed was an act of insolvency by the land company, and that the bill filed by the bank was properly filed, and should be sustained as a general creditors' bill, and that the assets of the company under the jurisdiction of the court were subject to distribution under the law relating to foreign corporations doing business in Tennessee, and as such should be decreed in the action then pending.

The decree further adjudged that Carhart was a *bona fide* holder of the bonds mentioned in his bill, and that he was entitled to recover thereon as provided for in the decree, but subject to the payment of debts due residents of Tennessee prior to the registration of such mortgage. It was also decreed that the Travelers' Insurance Company by its mortgage acquired a valid lien upon the property covered by it, subordinate however to debts due residents of Tennessee contracted prior to the registration thereof, and also subject to some other liabilities of the land company.

The case was taken to the Court of Chancery Appeals, which modified in some particulars the decree of the chancellor, and after such modification it was affirmed. Upon writ of error from the Supreme Court the case was there heard, and that

court held that the statute in question, providing for the distribution of assets of foreign corporations doing business in that State, was constitutional, and was not in contravention of any provision of the Constitution of the United States. The decree of the Court of Chancery Appeals was modified in some respects, and after modification it was affirmed, and the cause remanded to the chancery court for execution.

The case has been brought here on writ of error in behalf of certain unsecured creditors, non-residents of Tennessee, and also in behalf of the Travelers' Insurance Company and of the holder of the bonds issued by the land company.

*Mr. T. S. Webb* and *Mr. R. E. L. Mountcastle* for plaintiffs in error. *Mr. Quincy Ward Boese* was on their brief.

*Mr. S. C. Williams* and *Mr. E. J. Baxter* for defendants in error. *Mr. John H. Bowman* was on *Mr. Williams'* brief.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

There are two classes of creditors before the court, both of whom insist upon the erroneous character of the decree of the Supreme Court of the State. They are (*a*) general unsecured and non-resident creditors, and (*b*) non-resident creditors, who are also mortgagees. The creditors suing out this writ of error are all non-residents of the State of Tennessee, and they claim to have been illegally discriminated against in the courts below by reason of the statute of Tennessee providing for preferences to Tennessee creditors.

In regard to the unsecured non-resident creditors, objection is first made that there is only one of them, A. B. Carhart, who can be heard upon the question of the validity of the act of 1877, because he is the only person who has raised the point in any of the state courts. It is also claimed that the question was raised too late even by Carhart himself, inasmuch as it is alleged to have been raised by him for the first time in the Supreme Court of the State.

In reply to the first objection, it is urged on the part of creditors, other than Carhart, that they are general creditors in like class with him, and that if he can raise the question they are entitled to participate with him in the benefits of a decision thereof in his favor, to the same extent as if they had each personally raised the same question in the state court.

Cases are cited by counsel for these creditors from the courts of Tennessee, in which they say it has been held that "a broad appeal by any one party from an entire chancery decree, where the matter is purely of equitable cognizance, carries up the whole case so as to allow relief to be granted to those who do not appeal;" and it is said that Carhart made a broad appeal.

In reply, counsel for defendants in error say that the rule in Tennessee is that an appeal by an antagonistic party, even though a broad one, will not avail his opponent. It is also argued that the other creditors cannot be heard under Carhart's appeal, because the interests of such other creditors are not joint or common with him, but they are simply interested in the same question, which has never been held sufficient.

However it may be in regard to the rights of parties on appeal in the state court, we think that in order to be heard in this court the question must have been raised in the state court by the individual who seeks to have it reviewed here. A plaintiff in error in this court must show that he has himself raised the question in the state court which he argues here, and it will not aid him to show that some one else has raised it in the state court, while he failed himself to do so.

The two plaintiffs in error here, Sully, as the assignee of Manning, and Mrs. Myton, failed to appeal from the decree of the chancellor, as well as from the decree of the Court of Chancery Appeals, nor did they except to the report of the master, nor to the decree affirming it, and their first mention of the point in their own behalf is after the decision of the state Supreme Court.

This is not a case where, by the reversal of a decree at the instance of those who particularly raised the question in the courts below, the whole decree is opened and nullified so as to necessarily let in all parties standing in the same position to

share in the benefits of the decision. The fund is to be distributed in this case according to the decision of the court; and of the parties to this suit, those only can avail themselves of the benefits of the decree who have properly raised the question and in whose favor the decree is rendered.

We must hold, therefore, that neither Sully, as assignee of Manning, nor Mrs. Myton is in a position to raise the question of the invalidity of the state statute.

In regard to the objection that even Carhart has raised the question too late we think it is without foundation. He raised it in the Supreme Court, and that court decided it against him, not on the ground that he had not raised it in the lower court, but on its merits, and for the reason that in the judgment of the Supreme Court the statute was a valid and constitutional exercise of the legislative powers of the State.

The further objection made to Carhart is that it does not appear that he is a citizen of another State than Tennessee, and hence cannot avail himself of the fact of such citizenship in order to claim that his rights as such citizen have been infringed within the meaning of section 2 of article IV of the Constitution, declaring that the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States. We think the objection untenable.

In his original bill to foreclose the mortgage securing the eighty-five thousand dollars of bonds held by him, he described himself as a resident of the State of New York, and in the petition of Mrs. Myton and Mr. Carhart, filed October 11, 1895, in the two cases of the bank against the land company, and Sully, trustee, against the land company, Mrs. Myton is described as a resident of the State of New York, and A. B. Carhart is described as a resident of the city of Brooklyn. No question seems to have been made throughout the litigation as to the citizenship of those parties. The question does not seem to have arisen in any stage of the case up to the argument in this court. Although there may be some slight difference in the facts between this case and those which are stated in *Blake* v. *McClung*, *supra*, at page 246, we yet think that Carhart brings himself within the principle decided in that case, and that his citizen-

ship in the State of New York should be regarded as sufficiently proved.

Being entitled to raise the question, we must hold, in conformity to our decision in the *Blake case*, that Carhart, as an unsecured creditor and a citizen of New York, is entitled to share in the distribution of the assets of the Carnegie Land Company upon the same level as like creditors of the company residents of the State of Tennessee, and as the decree denies him that right, it must be reversed for that reason.

The next question arises out of the mortgage given as security for the payment of the bonds of the land company, of which Carhart held all that had been issued—$85,000.

Part of the fifth section of the act of 1877 provides—

"Nevertheless, creditors who may be residents of this State shall have a priority in the distribution of assets, or subjection of the same, or any part thereof, to the payment of debts over all simple contract creditors, being residents of any other country or countries, and also over mortgage or judgment creditors, for all debts, engagements and contracts which were made or owing by said corporation previous to the filing and registration of such valid mortgages, or the rendition of such valid judgments."

Under this provision of the section, creditors of the land company residing in Tennessee, whose debts accrued prior to the filing and registration of the Sully, trustee, mortgage were by the decree of the court below preferred in payment over the mortgagee. By reason of such preference Carhart did not receive what he would have received, but for the preference so given. He claims that this preference in favor of resident creditors, whose debts existed when his mortgage was registered, is an illegal discrimination against him as a non-resident mortgagee, because the statute, as he says, while directing such a discrimination against a non-resident mortgagee, does not permit it as against a resident mortgagee. Such a discrimination, if it existed, is invalid within the decision of *Blake* v. *McClung, supra.*

It is objected, however, on the part of the defendants in error, that this is a merely abstract or moot question, because

there are no resident mortgagees, and their rights have not, therefore, been determined. The objection is not well taken. Although there are no resident mortgagees in this case, yet the decree of the court below, following the statute, has postponed the payment of the mortgage, in favor of resident creditors whose debts accrued prior to the registration of that mortgage. If the statute does not permit such postponement against a resident mortgagee, then the postponement in the case of a non-resident mortgagee would be invalid. The postponement has in fact been made as against the non-resident mortgagee, and whether that postponement was legal and valid is no mere abstraction, because by reason thereof this non-resident mortgagee has actually suffered a loss in the payment of his mortgage. It is, therefore, entirely immaterial whether in this particular case there are or are not resident mortgagees. We are in this case necessarily brought to a decision of the question, whether the postponement was valid, and that depends upon the question, whether the act permits a similar postponement in the case of a resident mortgagee? If it does, it is conceded that the act is valid, so far as this particular question is concerned.

For us to hold that such postponement is not permitted in the case of a resident mortgagee is to condemn the statute on that point as a violation of the Constitution of the United States. Such a construction should not be adopted if the statute is reasonably susceptible of another which renders it valid. That rule applies, even though on some other point the statute has been already held to be a violation of the Federal Constitution.

We think the true construction of the statute requires us to hold that the resident owner of a mortgage would be postponed in its payment in favor of those debts made or owing by the corporation prior to the filing and registration of his mortgage. In other words, that the Tennessee general creditor has the same right of preference as against a resident mortgagee that he has against a non-resident, and the same burden that is placed upon non-resident mortgagees and judgment creditors is by the statute placed upon resident mortgagees and judgment

creditors.   We do not think that this construction leads to any absurd result.

It is urged that if it were to be so construed, a Tennessee creditor who had no mortgage or judgment would share with all other unsecured Tennessee creditors in the assets of the insolvent company, but that if he, being such creditor, took a judgment or mortgage as a security for the payment of his debt, he would thereby lose his right to share with the other resident non-secured creditors, and the latter would have a preferred right of payment over him for all debts of the company existing at the time of the registration of the mortgage.   The creditor, it is said, would thus lose his right as a general creditor, and he would obtain no lien by his mortgage or judgment as against those creditors of whom he was one before he took his mortgage.

We agree that a construction which leads to such a result would be absurd, but such a result does not follow from our construction of the statute.   When the Tennessee creditor takes his mortgage or recovers his judgment to secure an existing indebtedness, a new debt is not thereby created, but he has simply received, or obtained, a security for its payment, and a preference as against all other creditors whose debts may accrue subsequently to the filing and registration of his mortgage or the recovery of his judgment.   He gains no priority over existing creditors of his class by taking a mortgage or judgment. The debts existing at that time, including his own, are to be paid, and it is only against debts subsequently incurred that the mortgage, or the judgment, has a preferential lien.   If the debt for which he took the mortgage existed prior to the execution thereof, the mortgagee did not, by taking his mortgage, lose his right to share with the other unsecured creditors, but he did not acquire the right to assert the lien of his mortgage in preference to and against those creditors whose debts existed at the time of its registration.   His rights as a general creditor of the land company, existing prior to the registration of the mortgage, were not in any manner lost or affected by the mortgage.   He cannot assert the lien of his mortgage against prior creditors, but he does not lose his own right as a prior creditor

by taking the mortgage. Although the act was evidently passed for the purpose of awarding certain preferences to Tennessee over foreign creditors, yet we see nothing in its general purpose which requires us to consider the act as making a distinction in favor of a Tennessee mortgagee as against a nonresident mortgagee.

While the effect of this construction deprives both classes of mortgagees, in case of insolvency of the mortgagor, of any benefit from their mortgages as against resident non-secured creditors, existing when the mortgages were registered, yet, at the same time, it permits such mortgagees to share in the distribution of assets with such unsecured creditors, provided their own debts existed prior to the taking of the mortgage, and did not spring into existence simultaneously with the mortgage.

The rights of Carhart as a secured creditor must be adjusted with reference to these views. If his secured debt, or any portion thereof, did, in fact, exist prior to his mortgage, he is entitled to share with other unsecured creditors, who are residents of the State of Tennessee.

Plaintiff in error Carhart also insists that section 5 of the act of 1877 violates section 1 of the Fourteenth Amendment of the Constitution of the United States, in that it deprives the nonresident mortgagee of his property without due process of law.

We are unable to perceive any foundation for the claim, and we think the question has been already so decided in *Blake* v. *McClung*, which we have so frequently referred to. It was stated in that case, at page 260:

"It does not follow that, within the meaning of that amendment, (XIV,) the judgment below deprived the Virginia corporation of property without due process of law simply because its claim was subordinated to the claims of the Tennessee creditors. That corporation was not, in any legal sense, deprived of its claim, nor was its right to reach the assets of the British corporation in other States or countries disputed. It was only denied the right to participate upon terms of equality with Tennessee creditors in the distribution of particular assets of another corporation doing business in that State. It had notice of the proceedings in the state court, became a party to those

proceedings, and the rights asserted by it were adjudicated. If the Virginia corporation cannot invoke the protection of the second section of article IV of the Constitution of the United States relating to the privileges and immunities of citizens in the several States, as its co-plaintiffs in error have done, it is because it is not a citizen within the meaning of that section; and if the state court erred in its decree in reference to that corporation the latter cannot be said to have been thereby *deprived* of its property without due process of law within the meaning of the Constitution."

That language fits this case. The principle is not altered by the fact that in this case the creditor had a mortgage which was postponed, while in the case cited his debt was unsecured, but it was also postponed to the Tennessee creditor.

Nor can we see that there has been any denial by the State of Tennessee to any person within its jurisdiction of the equal protection of the laws. Upon this point also we refer to the same case of *Blake* v. *McClung*, where, at page 260, the question is decided.

These two last points would apply also to the mortgage of the Travelers' Insurance Company. That company being a corporation of the State of Connecticut could not raise the question of a denial of any privilege or immunity as such citizen, under the provision of section 2, article IV, of the Constitution. *Blake* v. *McClung, supra.* But the questions as to the deprivation of property without due process of law and of being denied the equal protection of the laws are raised by that corporation, and must be decided in a way similar to the case of Carhart.

With the exception of Carhart as a non-resident unsecured creditor, we do not see that the plaintiffs in error herein have any right to complain of the decree of the Supreme Court of Tennessee, but as such non-resident unsecured creditor he has the right to share in the distribution of the assets of the Carnegie Land Company upon the same level as like creditors of the company who are residents of the State of Tennessee, and as the decree below denies him that right, it must be reversed as to him for that reason, and the case remanded to the Supreme

Court of the State for further proceedings not inconsistent with this opinion.

*So ordered.*

MR. JUSTICE BREWER and MR. JUSTICE WHITE did not hear the argument and took no part in the decision of this case.