YALE & TOWNE MFG. CO. v. TRAVIS, State Comptroller of New York. *

(District Court, S. D. New York. August 6, 1919.)

No. E16–153.

1. CONSTITUTIONAL LAW ☞207(4)—TAXATION ☞545—DENIAL OF PRIVILEGES AND IMMUNITIES—INCOME TAX—NONRESIDENTS.

Where a state has power to impose an income tax upon both resident and nonresident employés, a provision requiring employers of nonresidents to withhold their tax is merely a regulation respecting collection, and does not render a statute unconstitutional as denying to nonresidents the privileges and immunities of citizens.

2. CONSTITUTIONAL LAW ☞206(1)—TAXATION ☞193—VALIDITY OF STATE STATUTE—INCOME TAX LAW—IMMUNITIES OF CITIZENS OF UNITED STATES.

The amendment of the New York Tax Law by Act May 14, 1919 (Laws 1919, c. 627) adding article 16 relating to tax of incomes, in its provisions imposing taxes upon nonresidents who are citizens of other states without giving them the benefit of the exemptions given to residents of the state, *held* unconstitutional and void as abridging the privileges and immunities of citizens of the United States.

In Equity. Suit by the Yale & Towne Manufacturing Company against Eugene M. Travis, Comptroller of the State of New York. On motion to dismiss bill. Denied.

Decree affirmed 251 U. S. ——, 40 Sup. Ct. 228, 64 L. Ed. ——.

The complainant, a Connecticut corporation, has its plant and principal business place at Stamford, Conn. It is authorized to do business in this state, where it maintains an office, owns property, and employs numerous residents of other states, to wit, of New Jersey and Connecticut, who are occupied in whole or in part in the complainant's business within this state. A number of complainant's employés, who are nonresidents of New York, perform substantially all of their services at the New York office, and their salaries are paid at stipulated times in the city of New York from funds of the complainant within the state. Still other employés similarly situated have their salaries paid to them by checks sent by mail from the home office to such employés in New York. Still other nonresident employés are occupied in services which are rendered partly in Connecticut and partly in New York, some spending relatively little time in Connecticut and vice versa, the amount of time spent in each place depending upon circumstances. The complainant also employs certain nonresidents as traveling salesmen, who spend their time in New York and in traveling through other states.

The number of employés occupied as above set forth, whose salaries are in excess of $1,000 per annum, exceed 50 in number, and their total salaries are in excess of $200,000.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Decree affirmed 251 U. S. ——, 40 Sup. Ct. 228, 64 L. Ed. ——.

Upon May 14, 1919, what is known as "chapter 627 of the Laws of 1919," and entitled "An act to amend the tax law, in relation to imposing taxes upon and with respect to incomes," became a law of this state.

Section 351 of the act provides:

"A tax is hereby imposed upon every resident of the state, which tax shall be levied, collected and paid annually upon and with respect to his entire net income as herein defined at rates as follows:" 1 per cent. on amounts not exceeding $10,000, 2 per cent. upon amounts in excess of $10,000 and not in excess of $50,000, and 3 per cent. on amounts in excess of $50,000.

The section continues: "A like tax is hereby imposed and shall be levied, collected and paid annually, at the rates specified in this section, upon and with respect to the entire net income as herein defined, except as hereinafter provided, from all property owned and from every business, trade, profession or occupation carried on in this state by natural persons not residents of the state." The tax shall first be levied and paid with respect to the calendar year 1919.

From here on the act proceeds to specify its provisions in much detail. "In general," says Mr. Powell in his very recent work, Taxation of Corporations and Personal Income, "it may be said that the New York law has copied the Federal Income Tax Act, substituting 'taxpayer other than a resident' for 'nonresident alien' and 'January 1, 1919' for 'March 1, 1913.' The remedial procedure and method of collection in the New York Corporation Tax Law, arts. 9 and 9a, are substituted for the federal procedure."

Nonresidents are not entitled to the personal exemption provided for residents, to wit, $1,000 for unmarried persons and $2,000 for married persons and $200 for each dependent.

Residents are likewise entitled to certain deductions in computing net income, but nonresidents are allowed such proportion of deduction as the income arising from sources within the state bears to the total income. The method of apportionment and allocation of claimed deductions is to be determined by the state comptroller.

The act creates "withholding agents," and the complainant would be one under the definition of the term, and such agents are required "to deduct and withhold 2% from all salaries, wages, commissions, annuities, emoluments, and other fixed and determinable annual or periodical gains, profits and incomes of which he shall have control, receipt, custody, disposal or payment, if the amount paid or received in any year equals or exceeds $1,000; unless there shall be filed with the withholding agent before the time to return any payment a certificate * * * to the effect that the person entitled to such salary," etc., is a resident, and setting forth his residence in the state.

The complainant alleges the existence between it and its employés of term contracts, and is so positioned generally as to come within the terms of this act, and would, it says, be put to considerable expense in withholding a percentage of the salaries of its employés. The defendant as comptroller is alleged to threaten to enforce the penalties of the statute against the complainant unless it complies with the terms of the statute. The jurisdictional allegations of the bill being sufficient, the complainant asks for equitable relief against the threatened action of the comptroller upon the grounds:

(1) That the statute is illegal and unconstitutional, in that it is contrary to and in violation of article 1, § 8, of the Constitution by interfering with and directly hindering commerce;

(2) That it impairs the obligation of contracts between the complainant and its employés;

(3) That it is contrary to section 2 of article 4 of the Constitution, in that it deprives the citizens of the states of Connecticut and of New Jersey of the privileges and immunities enjoyed by citizens of the state of New York.

(4) That it contravenes the Fourteenth Amendment of the federal Constitution, in that it abridges the privileges and immunities of citizens of the United States residing in, and citizens of, Connecticut and New Jersey and states other than New York, and that the complainant and its employés are deprived of their property without due process of law, and that they are denied the equal protection of the laws.

262 F.—37

Louis H. Porter and Archibald Cox, both of New York City (F. Carroll Taylor, of Stamford, Conn., on the brief), for complainant.

James S. Y. Ivins, Deputy Atty. Gen., of the State of New York, for defendant.

KNOX, District Judge (after stating the facts as above). By reason of the decision which I have determined should be made in this case, it will be unnecessary to enter upon a discussion of the enactment in its entirety. That a state possesses practically unlimited powers of taxation within the realm of its jurisdiction save as circumscribed by constitutional limitations is elementary, and income taxes are no exception.

The outstanding question, it seems to me, in this litigation is whether the act as drawn transgresses upon the equal privileges and immunity provisions of the federal Constitution. If it does, I need proceed no further.

So far as decided cases upon this precise question go, there appear to be none.

It is true the question was raised in the Income Tax Cases of Wisconsin, 148 Wis. 456, 134 N. W. 673, 135 N. W. 164, wherein Chief Justice Winslow said:

"It is argued that the provisions which deny to nonresidents the exemptions which are allowed to residents * * * violate section 2 of article 4 of the federal Constitution, which provides that 'the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states.' * * * We regard it as a question involved in considerable doubt, and one not necessary to be passed upon now."

The case of Shaffer v. Howard (D. C.) 250 Fed. 873, by reason of its facts, is but of little help in this instance, and it is necessary to consider more or less original sources, and resort is had to the case of Corfield v. Coryell, 4 Wash. C. C. 381, Fed. Cas. No. 3,230.

The accuracy of the language, and the authority of this case, so far as I know, have not been questioned, and Justice Washington there said that he had no hesitation in confining the expression that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states" to those privileges and immunities which were in their nature fundamental, which belong of right to citizens of all free governments and which have at all times been enjoyed by the citizens of the several states which compose the Union from the time of their becoming free, independent, and sovereign. Among these fundamental rights, said Justice Washington, were "the right of a citizen of one state to pass through or to reside in any other state, for the purposes of trade, agriculture, professional pursuits, or otherwise; to claim the benefit of the writ of habeas corpus; * * * to take, hold, and dispose of property, either real or personal, and an exemption from higher taxes or impositions than are paid by the other citizens of the state."

Thereafter, in Paul v. Virginia, 8 Wall. 168, at page 180 (19 L. Ed. 357), the Supreme Court said:

"It was undoubtedly the object of the [constitutional] clause in question to place the citizens of each state upon the same footing with citizens of other

states, so far as the advantages resulting from citizenship in those states are concerned. It relieves them from the disabilities of alienage in other states; it inhibits discriminating legislation against them by other states; it gives them the right of free ingress into other states, and egress from them; it insures to them in other states the same freedom possessed by the citizens of those states in the acquisition and enjoyment of property and in the pursuit of happiness; and it secures to them in other states the equal protection of their laws. It has been justly said that no provision in the Constitution has tended so strongly to constitute the citizens of the United States one people as this."

Again, in Ward v. Maryland, 12 Wall. 418, 20 L. Ed. 449, the court, in specifying some of the rights included within the words "privileges and immunities," said one of them was that a citizen of one state should be " * * * exempt from any higher taxes or excises than are imposed by the state upon its own citizens." See, also, Cooley, Const. Limitations, 16. Subsequently in the Slaughterhouse Cases, 16 Wall. 36, 21 L. Ed. 394, it was said that the purpose of the Fourteenth Amendment " * * * was to declare to the several states that whatever those rights, as you grant or establish them to your own citizens, or as you limit or qualify, or impose restrictions on their exercise, the same, neither more nor less, shall be the measure of the rights of citizens of other states within your jurisdiction." Certainly, the force of this pronouncement was not qualified by the vigor of the dissents in these cases; and also in Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923, in a discussion of the Fourteenth Amendment somewhat similar language was used.

Then there may be found the cases of Blake v. McClung, 176 U. S 59, 20 Sup. Ct. 307, 44 L. Ed. 371, followed by Sully v. American National Bank, 178 U. S. 289, 20 Sup. Ct. 935, 44 L. Ed. 1072, wherein it was held that nonresident unsecured creditors stood upon the same footing with resident unsecured creditors, a statute of Tennessee to the contrary notwithstanding.

It need not be argued that the rights of a corporation created by one state within the borders of another state are not altogether similar to the rights of a natural person so circumstanced (Paul v. Virginia, supra); but, even so, it was decided in Southern Railway v. Greene, 216 U. S. 400, 30 Sup. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247, that to tax a foreign corporation under the circumstances there present by a different and more onerous rule than was used in taxing domestic corporations for the same privilege constituted a denial of the equal protection of the law.

In Wiley v. Parmer, 14 Ala. 627, it was held that the statute of that state, taxing the slaves of a nonresident at double the amount at which those of a resident were taxed, was unconstitutional.

In Bliss's Petition, 63 N. H. 135, it was held that a state cannot refuse a peddler's license to a citizen of another state, asked for upon the same terms that it grants licenses to its own citizens. Among other things the court said:

"The equality of privileges and immunities guaranteed by the federal Constitution * * * to the citizens of each state exempts them from any higher taxes than the state imposes upon her own citizens."

Other cases to the same general effect are State v. Lancaster, 63 N. H. 267; McGuire v. Parker, 32 La. Ann. 832; Oliver v. Washington Mills, 11 Allen (Mass.) 280; Town of Farmington v. Downing, 67 N. H. 441, 30 Atl. 345.

In Sprague v. Fletcher, 69 Vt. 69, 37 Atl. 239, 37 L. R. A. 840, it was declared that an act of Vermont which denied to nonresidents of the state rights which are allowed to residents under the same circumstances, in respect to deductions from taxable personal property by reason of debts owed by the taxpayers, conflicts with article 4, § 2, of the federal Constitution, which secures to citizens of each state "all the privileges and immunities in the several states."

Tested by the standard of the principles set forth in the foregoing cases does the failure to accord to nonresidents of the state the exemptions and immunities provided for to residents make this law, or part of it, invalid?

It becomes necessary to determine what persons are meant by the term "nonresidents." The comptroller of the state has used this language in referring to the term:

"A person is a nonresident within the meaning of the act, if he receives taxable income from property owned or from a business, trade, profession or occupation carried on in the state, but is not a resident thereof."

What I have to say will be confined to such nonresidents who are citizens of states other than New York.

The question is of importance to the state of New York, and is likewise of importance to the thousands of persons, residents, and citizens of adjoining states, who daily come into this state and here contribute to its welfare and prosperity.

It may be well to inquire what is the nature of the discrimination which it is alleged nonresidents will be subjected to under the operation of the law. The following illustration will serve to answer the inquiry:

Two persons are employed in this state by the plaintiff. Their work is in all respects similar, and each receives a salary of $2,000 per annum. Assume that each employé is married, one living with his wife in New York, the other living with his wife in Connecticut. Under the law as it is written the resident of New York would be exempt from taxation, but the resident of Connecticut would be subject to a tax of $20.

[1] Section 366 provides that "every withholding agent shall deduct and withhold two per centum from all salaries," etc., of nonresidents. The tax imposed by section 351 is at the rate of one per cent. on net incomes up to $10,000. This is obviously an error in the act, and under the regulations withholding agents are required to withhold but 1 per cent. Without commenting upon the authority of the regulation so imposed, this discrepancy may be passed. The withholding of any sum from the salaries of nonresidents is objected to, inasmuch as there is no withholding from residents. Assuming the power to lay a tax upon nonresidents based upon personal service, this feature of the act I am inclined to think is not necessarily fatal to its validity. It is the law, I think, that not only must the final purpose of

the law be considered, but the means of its administration—the ways it may be defeated. St. John v. New York, 201 U. S. 633, 26 Sup. Ct. 554, 50 L. Ed. 896, 5 Ann. Cas. 909. As to this feature of administration, I believe that some classification between residents and nonresidents may with propriety be made. District of Columbia v. Brooke, 214 U. S. 138, 29 Sup. Ct. 560, 53 L. Ed. 941; Field v. Barber Asphalt Co., 194 U. S. 618, 24 Sup. Ct. 784, 48 L. Ed. 1142. Reference may also be had to Bell's Gap Railroad Co. v. Pennsylvania, 134 U. S. 232, 10 Sup. Ct. 533, 33 L. Ed. 892, wherein the court held that the deduction of a tax by a withholding agent is merely a matter of convenience, adopted as a secure method of collecting the tax, and as such is not objectionable.

As to the inconvenience resulting to the nonresident by reason of the payment by the withholding agent of the gross amount so withheld, and the trouble and expense of the taxpayer in recovering any excess over the tax finally determined upon, I need not now comment.

[2] Paragraph 5 of section 360 provides that a resident may deduct losses incurred in any transaction entered into for profit, though not connected with the trade or business, "but in the case of a taxpayer other than a resident of the state only as to such transaction within the state." The result of this is that two employés of complainant, each receiving a salary of $5,000 a year, may together enter into a business venture in another state; if the venture within a year results in a loss of say $5,000 to each, the resident of New York may deduct his loss and pay no tax, but the nonresident of New York is subject to the tax. Also under paragraph 6 a resident may deduct his losses from fires, but unless the property of a nonresident injured by fire is within this state he can make no deduction.

Theoretically, the first of the two last-mentioned discriminations may be justifiable upon the ground that as to a resident of New York the state is entitled to tax upon his gains and profits from sources without the state, whereas as to a nonresident the tax may be recovered only as to net income from property, businesses, and occupations within the state of New York. The fact, however, remains that it is the personal knowledge of us all that the only appreciable source of income of thousands of nonresidents subject to this tax lies within the confines of this state, and that as a matter of practical operation of the statute the effect will be simply to deny to a nonresident, no matter what his misfortune, any exemptions. That there are in these provisions of the law a number of problems as to the character and place of income sought to be taxed well worthy of serious consideration is undeniable; but, in the aggregate, I am of opinion that as now framed the statute cannot operate without depriving citizens of other states of privileges and immunities which are open to citizens and residents of New York.

The difficulty here has arisen, it would appear, by the Legislature having assumed that a citizen of the United States residing in a state other than New York sustains to the taxing power of that state the same relationship that a nonresident alien sustains to the federal taxing power. There is, however, a distinction. Generally speaking, the

United States government, as suggested by Mr. Powell in his book Taxation of Corporations and Personal Incomes, may prescribe terms under which aliens may do business here, or prevent them from doing business here altogether. By the Fourteenth Amendment it is declared that—

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside," and "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

It is this provision of the Constitution along with the second section of article 4 and the interstate commerce section of our fundamental law that have been largely responsible for the community of interest, the unanimity of purpose, the united effort, and the magnificent accomplishments of our people. If now, under one pretense or another the states are to erect economic and taxation barriers along their boundaries, it is but a question of time when the citizens of the various states will for all practical purposes be burdened with the disabilities of alienage, and this would be intolerable.

For these reasons, I am constrained to hold that the provisions of chapter 627 of the laws of the state of New York for the year 1919 are, in so far as they attempt to assess, lay, and collect a tax upon citizens of the United States who are not residents of the state of New York, and who are citizens of other states, without according them the privileges and immunities afforded by said act to citizens of the United States who are citizens of the state of New York and resident therein, are unconstitutional and void. Nothing herein, however, is meant to be decided as to the validity of the statute so far as it relates to residents of the state of New York.

Neither that question nor the question as to the power of the state to lay a tax upon nonresident citizens of another state based upon their earnings in this state for personal service rendered need, in view of the basis of my decision, now be considered.

The motion will be denied.