Luis NUNEZ and Olga Nunez, Individually and as Parents and as Next Friends of Luis Nunez, Jr. and Cynthia Nunez, Minor Children, Appellants,

v.

Sandra A. AUTRY, Receiver, Appellee.

No. 3–93–581–CV.

Court of Appeals of Texas,
Austin.

Aug. 31, 1994.

Jeffrey B. Powell, Law Offices of James F. Scherr, El Paso, for appellants.

Margaret Uhlig Pemberton, Cantilo, Maisel & Hubbard, Austin, for appellee.

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

KIDD, Justice.

Appellants, Luis Nunez and Olga Nunez, individually and as parents and next friends of Luis Nunez, Jr. and Cynthia Nunez, challenge the constitutionality of section 5(2) of the Texas Property and Casualty Insurance Guaranty Act ("the Act"), 70th Leg., R.S., ch. 1073, § 36, 1987 Tex.Gen.Laws 3610, 3657 (Tex.Ins.Code Ann. art. 21.28–C, § 5(2), since amended).[1] Appellants filed a proof of claim under the Act with appellee, Sandra A. Autry, the Receiver of National County Mutual Fire Insurance Company ("the Receiver"). The Receiver rejected appellants' proof of claim because it did not indicate that either they or the insured was a Texas resident, as required by the Act. Appellants filed suit in district court, contending that their claim was wrongly denied and raising constitutional challenges to section 5(2)'s residency requirement. The district court granted the summary judgment motion of the Receiver. Appellants renew their constitutional challenges before this Court. We will affirm the judgment of the district court.

## BACKGROUND

On July 22, 1988, appellants were injured when their car was struck by a truck in El Paso, Texas. The driver of the truck was a Mexican resident. The truck was insured by National County Mutual Fire Insurance Company. The insured was Transportes Union, a syndicate of truck owners/drivers located in Juarez, Mexico. Appellants judicially admit that at the time of the accident, they were not residents of Texas but residents of Juarez, Mexico.[2]

On May 9, 1989, National County was ordered into permanent receivership. Appellants filed a proof of claim with the Receiver, seeking to recover benefits under the Act.[3] The Receiver rejected appellants' proof of claim, citing section 5(2)'s requirement that *either* the third-party claimant, the liability

---

1. In their brief, appellants cite the current version of the Act. However, we must apply the version of the Act in effect at the date of the insurance company's impairment. *See Latter v. Autry*, 853 S.W.2d 836, 836 n. 1 (Tex.App.—Austin 1993, no writ); *Durish v. Channelview Bank*, 809 S.W.2d 273, 275–77 (Tex.App.—Austin 1991, writ denied).

2. The statement of Appellants' counsel in oral argument that appellants are United States citizens was not disputed by the Receiver.

3. Appellants do not seek to recover the corporate assets of National County; this cause is limited only to the Guaranty Fund.

claimant, or the insured be a Texas resident for the claim to be covered under the Act.

Appellants filed suit in district court contending that the Receiver had wrongly denied their claim. Appellants later filed an amended petition, which sought a declaratory judgment that section 5(2) was unconstitutional to the extent that it distinguished between residents and non-residents of Texas. Appellants based their constitutional claims on "the equal protection clause and the due process clause of the United States Constitution, as applied to state action through the Fourteenth Amendment, as well as related provisions of the Constitution of the State of Texas." Appellants also contended that the resident/non-resident distinction violated "the Privileges and Immunities Clause of the United States Constitution." The Receiver filed special exceptions to appellants' petition, to which appellants responded with a supplemental petition that cited specific constitutional provisions.

The Receiver filed a motion for summary judgment, which the district court granted. Appellants raise two points of error, challenging section 5(2)'s distinction between residents and non-residents based on the Privileges and Immunities Clause of article IV, section 2 of the United States Constitution, and on the Equal Protection Clause of the Fourteenth Amendment.

### ARTICLE 21.28–C OF THE INSURANCE CODE

The Act establishes a Guaranty Association consisting of all property and casualty insurers licensed to transact insurance business in Texas. Act §§ 5(2), 14. The purpose of the Act is to provide additional protection to insureds and liability claimants of "im-

paired" insurance companies.[4] Act § 2; *Durish v. Channelview Bank,* 809 S.W.2d 273 (Tex.App.—Austin 1991, writ denied). The Association accomplishes this aim by maintaining a Guaranty Fund with assessments from solvent member insurers. Act § 7. A Receiver of an impaired insurer may use the fund to aid in paying "covered claims" when the impaired insurer's assets are insufficient. Act § 10. Section 5(2) of the Act defines covered claims as follows:

"Covered claim" is an unpaid claim of an insured or third party liability claimant which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Act applies, issued or assumed (whereby an assumption certificate is issued to the insured) by an insurer licensed to do business in this State, if such insurer becomes an "impaired insurer" after the effective date of this Act and *(a) the third party claimant or liability claimant or insured is a resident of this State at the time of the insured event;* or (b) the property from which the claim arises is permanently located in this State.

Act § 5(2) (emphasis added).

### PRIVILEGES AND IMMUNITIES CLAUSE

■ In their first point of error, appellants contend that section 5(2) "directly contravenes the privileges and immunities clause of the United States Constitution." Although the point of error is not specific, appellants' arguments and authorities rely upon the Privileges and Immunities Clause of article IV, section 2, of the United States Constitution. U.S. Const. art. IV, § 2.[5]

---

4. An "impaired insurer" is a member insurer that has been placed in temporary or permanent receivership as a result of insolvency. Act § 5(4).

5. The Receiver contends that appellants waived their challenge under article IV, section 2 by referring only to "The Privileges and Immunities Clause of the United States Constitution" in their response to the Receiver's summary judgment motion. There are two Privileges and Immunities Clauses in the United States Constitution: article IV, section 2, and the Privileges and Im-

munities Clause at section one of the Fourteenth Amendment, which prohibits states from making laws which would abridge "the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, § 1. Thus, Appellants' challenge to section 5(2) in their response was ambiguous. However, the Receiver did not file special exceptions to Appellants' summary judgment response, as the Receiver did to Appellants' first amended petition. *See* Tex.R.Civ.P. 91. Accordingly, the Receiver cannot now complain on appeal of any ambiguity in Appellants' response.

■ The Privileges and Immunities Clause of article IV, section 2 (hereinafter "the Clause") states, "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2. The terms "citizen" and "resident" are essentially interchangeable for purposes of analysis under the Clause. *Hicklin v. Orbeck*, 437 U.S. 518, 524 n. 8, 98 S.Ct. 2482, 2486–87 n. 8, 57 L.Ed.2d 397 (1978). Therefore, since appellants are not residents of any state of the United States of America, but residents of Mexico, the Clause on its face would seem to afford them no protection. However, even if the Clause does provide protection for United States citizens who are not residents of any state, section 5(2) does not violate appellants' rights under the Clause.

■ The Clause prevents a state from discriminating against citizens of other states in favor of its own citizens. *Hague v. Committee for Indus. Org.*, 307 U.S. 496, 511, 59 S.Ct. 954, 962, 83 L.Ed. 1423 (1939). The Clause was included in the Constitution "to help fuse into one Nation a collection of independent sovereign States. It was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Toomer v. Witsell*, 334 U.S. 385, 395, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460 (1948).

■ However, like most constitutional provisions, the Clause "is not an absolute." *Toomer*, 334 U.S. at 396, 68 S.Ct. at 1162; *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 383, 98 S.Ct. 1852, 1860, 56 L.Ed.2d 354 (1977) ("It has not been suggested, however, that state citizenship or residency may never be used by a State to distinguish among persons."); *Blake, Rogers, Brown & Co. v. McClung*, 172 U.S. 239, 256, 19 S.Ct. 165, 172, 43 L.Ed. 432 (1898) ("We must not be understood as saying that a citizen of one state is entitled to enjoy in another state *every* privilege that may be given in the latter to its own citizens."). Legal distinctions between residents and non-residents reflect the fact that our nation is a collection of individual states. *Baldwin*, 436 U.S. at 383, 98 S.Ct. at 1860.

As one commentator put it, "There also appear to be some goods and services that a state's citizens, having created or preserved for themselves, are entitled to keep for themselves." Laurence H. Tribe, *American Constitutional Law* 539 (2d ed. 1988). For example, states may charge non-resident students higher tuition rates than resident students, *Vlandis v. Kline*, 412 U.S. 441, 452–53, 93 S.Ct. 2230, 2236–37, 37 L.Ed.2d 63 (1973), and charge non-residents disproportionately higher fees for recreational hunting licenses, *Baldwin*, 436 U.S. at 388, 98 S.Ct. at 1862–63.

Appellants cite two cases which they contend demonstrate that section 5(2)'s residency distinction violates the Clause: *Blake, Rogers, Brown & Co. v. McClung*, 172 U.S. 239, 19 S.Ct. 165, 43 L.Ed. 432 (1898); *Sully v. American Nat'l Bank*, 178 U.S. 289, 20 S.Ct. 935, 44 L.Ed. 1072 (1900). These cases, however, involved a different sort of preference for residents. The statutes in both cases gave resident creditors preference over non-resident creditors in obtaining a failed corporation's assets. The Court found the resident-creditor preferences unconstitutional, explaining that when the property of an insolvent private corporation is distributed, non-resident creditors are entitled "to stand upon the same plane with creditors of like class who are citizens of such state, and cannot be denied equality of right simply because they do not reside in that state, but are citizens residing in other states of the Union." *Blake*, 172 U.S. at 258, 19 S.Ct. at 172–73. *Sully* followed the holding of *Blake*. *Sully*, 178 U.S. at 299, 20 S.Ct. at 939–40. Therefore, under *Blake*, appellants would be entitled to pursue the *corporate* assets of National County with the same status as resident creditors.

However, appellants are not seeking any of National County's corporate assets. Rather, appellants are seeking to recover from the Guaranty Fund created by the Act. In *Blake*, the Supreme Court specifically stated that distinctions between residents and non-residents in statutes like the Act *do not* violate the privileges and immunities clause:

It may be appropriate to observe that the objections to the statute of Tennessee

do not necessarily embrace enactments that are found in some of the states requiring foreign insurance corporations, as a condition of their coming into the state for purposes of business, to deposit with the state treasurer funds sufficient to secure policy holders in its midst. Legislation of that character *does not* present any question of discrimination against citizens forbidden by the Constitution. *Insurance funds set apart in advance for the benefit of home policy holders of a foreign insurance company doing business in the state are a trust fund of a specific kind to be administered for the exclusive benefit of certain persons.* Policy holders in other states know that those particular funds are segregated from the mass of property owned by the company, and that they cannot look to them to the prejudice of those for whose special benefit they were deposited. The present case is not one of that kind.

*McClung,* 172 U.S. at 257, 19 S.Ct. at 172 (emphasis added).

We conclude that section 5(2) does not violate the Clause. The legislature created the insurance fund for the benefit of citizens of Texas, and held it in trust for them. It is the very sort of enactment that the Supreme Court distinguished as *constitutional* nearly one hundred years ago in *Blake.* The Supreme Court's decisions applying the Clause since do not indicate that such a statute is any less constitutional today. Appellants' first point of error is overruled.

## EQUAL PROTECTION

In point of error two, appellants contend that section 5(2) contravenes the Equal Protection Clause of the United States Constitution. First, appellants argue that section 5(2) violates the Equal Protection Clause because it infringes on their constitutional right to travel, citing *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), and *Zobel v. Williams,* 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982). Appellants also contend that we should recognize non-residents as a

suspect class for purposes of equal protection analysis.

■ The cases cited by appellants for the proposition that section 5(2) infringes on their constitutional right to travel are all distinguishable; the cases concern *durational* residency requirements. In *Shapiro v. Thompson,* the Supreme Court held that laws denying welfare benefits to residents who had resided in the state for less than one year violated the Equal Protection Clause, absent a compelling state interest. *Shapiro,* 394 U.S. at 628, 89 S.Ct. at 1328. The Court reasoned that the statute's purpose, to deter the migration of needy persons into the state, was not a constitutionally permissible objective because it penalized those who had exercised their constitutional right to travel. *Id.* at 629–31, 89 S.Ct. at 1328–29. *Dunn v. Blumstein* and *Zobel v. Williams* also struck down laws that drew distinctions based on length of residence. *Dunn,* 405 U.S. at 342, 92 S.Ct. at 1003. ("Durational residence laws impermissibly condition and penalize the right to travel by imposing their prohibitions on only those persons who have recently exercised that right."); *Zobel,* 457 U.S. at 65, 102 S.Ct. at 2315–16 (holding that favoring established residents over new residents was a constitutionally impermissible justification for a statute).

Additionally, *Shapiro* and its progeny reason that durational residency requirements raise equal protection concerns because they divide a state's citizens into two classes. In *Shapiro,* the Court explained that a state may not accomplish an otherwise valid purpose "by invidious distinctions between classes of its citizens." *Shapiro,* 394 U.S. at 633, 89 S.Ct. at 1330. Similarly, in *Zobel,* the Court struck down the Alaska statute because it "creates fixed, permanent distinctions" between classes of its citizens based on the length of their residency. *Zobel,* 457 U.S. at 59, 102 S.Ct. at 2312.

■ The Court has been careful in these cases to distinguish *durational* residency requirements: "We emphasize again the difference between bona fide residence requirements and durational residence requirements." *Dunn,* 405 U.S. at 343, 92 S.Ct. at 1003. The Supreme Court also has stated

that assuring that services provided for residents are enjoyed *only* by residents is a substantial state interest. *Martinez v. Bynum*, 461 U.S. 321, 328, 103 S.Ct. 1838, 1842, 75 L.Ed.2d 879 (1983) (upholding state statute permitting school district to deny tuition-free education to child living apart from parent or legal guardian if child in district "for the primary purpose" of attending school in the district). Conditioning benefits on state residency is presumptively permissible. *Califano v. Torres*, 435 U.S. 1, 5, 98 S.Ct. 906, 908–09, 55 L.Ed.2d 65 (1978). Section 5(2) is an example of a bona fide residency requirement and therefore does not infringe on appellants' right to travel.

■ With regard to appellants' argument that non-residents should be recognized as a suspect class, we note that the United States Supreme Court has been extremely hesitant in recognizing additional suspect classes. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (holding that the lower court erred in treating mental retardation as a quasi-suspect class); *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 2567–68, 49 L.Ed.2d 520 (1976) (refusing to recognize the elderly as a suspect class); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (refusing to recognize "the poor" as a suspect class). We do not believe that non-residents are accurately characterized as a "discrete and insular minority." *United States v. Carolene Products Co.*, 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 783 n. 4, 82 L.Ed. 1234 (1938).[6] Accordingly, we decline to recognize non-residents as a suspect class for purposes of equal protection analysis.

■ Because residency is not a suspect class and because section 5(2) does not infringe on a fundamental right, the provision must bear only a rational relation to a legitimate government interest to be valid under the Equal Protection Clause. *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 457–58, 108 S.Ct. 2481, 2486–87, 101 L.Ed.2d 399 (1988); *Williamson v. Lee Optical*, 348 U.S. 483, 487–91, 75 S.Ct. 461, 464–66, 99 L.Ed.

563 (1955). In Texas, the legislature has seen fit to set aside a specific fund to supplement Texas residents' recovery from the limited assets of insolvent insurance companies. Protecting Texas residents from financial loss due to insurance company insolvencies is a legitimate state objective. Because section 5(2) is rationally related to achieving this objective, it does not violate the equal protection clause. Appellants' second point of error is overruled.

## CONCLUSION

Finding no error, we affirm the judgment of the district court.

---

**6.** *Everyone* is a non-resident of some place.